## WHITNEY and others vs. BRUNETTE.

Proceedings by attachment are special and statutory, and the statute must be substantially if not strictly and exactly complied with, to give the court or officer issuing the writ jurisdiction.

An affidavit for an attachment under chap. 112, R. S. 1849, which stated only that the defendants were indebted to the plaintiffs in a specified sum, without stating that the sum was *due*, or that any sum was due "over and above all legal set-offs," was so defective in substance as to render void the writ of attachment issued upon it.

A writ of attachment under the statute of 1849, which did not contain any direction to the sheriff to *summon* the defendants, as required by section 4 of chap. 112, was void.

If a void writ can be helped at all by amendment, the amendment should be allowed effect only as between the parties to the proceeding, and not so as to cut off *intermediate* rights acquired by *third* persons.

January Term, The title of one who purchases without fraud from a defendant in attachment,
1862.          goods which have been seized under a *void* writ, will not be affected by the
               fact that a motion was subsequently made by the attachment defendant to dis-
WHITNEY et al.  miss the writ, and that the court overruled the motion and allowed the wri
v.              to be amended.
BRUNETTE.
          PAINE, J., held that a void writ of attachment was a nullity and could not be
               amended, and that if a decision of the court from which the void attachment
               issued, overruling the defendant's motion to set aside, was binding upon *him*,
               it was not because the court had jurisdiction to issue the attachment, but be-
               cause, having jurisdiction over him after he had appeared and submitted that
               question to the court, its decision made the matter *res adjudicata* as to him.
          DIXON, C. J., thought it was not necessary in this case to decide upon the power
               of the court to amend the attachment proceeding, or as to the conclusiveness
               upon the parties to that suit, of the order of the court overruling the defend-
               ant's motion to quash the writ; and declined to consider those questions.


ERROR to the Circuit Court for *Milwaukee* County.

Most of the material facts in this case are stated in the opinion of the court. The attachment in favor of *Morrow* against Christie & Co. was issued by the clerk of the circuit court of Brown county, December 7, 1850, and delivered to the sheriff, *Brunette*, who made return, that on that day he attached the interest of the defendants in certain lumber, and on the 9th and 10th of December their interest in certain other lumber, caused it to be appraised, &c., and served a copy of the writ and inventory upon Brunquest, one of the defendants in the attachment, and that service of the writ was accepted by the other defendants. On the 25th of January, 1851, Brunquest moved the court to set aside the writ of attachment, on the ground that it did not command the officer to summon the defendants as required by the statute, and was not made returnable at any term of the court, and was void on its face. On the 11th of August, 1851, the plaintiff in the attachment moved for leave to amend the writ by inserting in it a command to the sheriff to summon the defendants to answer the plaintiff by a day and at a place therein to be specified, and to make return of the writ. Then follow, in the record, these entries: "August 18, 1851. Defendant Brunquest moved to set aside the amended writ in this cause, because plaintiff does not, in the affidavit annexed to the original writ, [state] that the defendants are indebted to him in any sum over and above all legal set-offs." "18th

Àugust, 1851. The several motions filed in this cause being now argued and by the court here fully understood, it is considered and adjudged by the court that the motion to dismiss be overruled, and that the motion to amend be allowed * * and that the writ be amended and be made returnable of the fourth Monday of March, 1851." On the same day the writ was amended in pursuance of the motion and order. On the 1st of March, 1852, Brunquest filed a traverse of the affidavit on which the attachment issued, and the plea of *non assumpsit*. In May, 1852, the cause was removed to Marquette county for trial; and in March, 1860, the plaintiff in the attachment recovered judgment against the defendants for $11,829 65. *Whitney*, who claimed all the lumber in controversy under a sale to him by Brunquest, commenced an action of replevin for it in the the the U. S. District Court, in February, 1851, and the marshal replevied the principal portion of the lumber and delivered it to *Whitney*. The replevin suit was dismissed by the district court for want of jurisdiction. For that taking of the lumber, the present action of trespass was brought by *Brunette*, for the use of *Morrow*, against *Whitney* and the sureties on his bond in the action of replevin. Verdict and judgment against the defendants.

*Finches & Lynde* and *Smith & Salomon*, for plaintiffs in error:

1. The affidavit upon which the writ of attachment in favor of *Morrow* against Christie & Co. was based, was defective, because it did not "specify the amount of indebtedness *over and above all legal set-offs*" (*Elliott vs. Jackson*, 3 Wis., 649, 653–4; *Wilson vs. Arnold*, 1 Cooley (Mich.), 98, 104), nor whether the contract was express or implied, nor definitely whether the debt was upon a contract of any kind (7 Wend., 490; 3 Coms., 41; 4 Hill, 498; 3 Wis., 649, 653–4; 7 Barb., 253); nor did it allege that the debt was *due*. 2. The writ of attachment was void. There is no direction in it to summon the defendants or to return the writ. This was essential (R. S. 1849, chap. 112, sec. 4), and without it the paper was no writ. 3. The paper was not amendable, for there was nothing to amend. *Bunn vs. Thomas*, 2 Johns., 190.;

January Term, 1862.

Whitney et al. v. Brunette.

*Burk vs. Barnard,* 4 id., 309; 5 N. H., 229; 13 Pick., 90; 9 Johns., 386; 2 Rand., 1; 1 Monroe, 146; 4 Cow., 49; 2 Pennington, 632; 4 Barn. & Ald., 288; 1 Bac. Abr., 240; 1 Str., 399; 2 Black. R., 846; and see 3 N. H., 70; 18 Wend., 675; 15 id., 301. The statute had prescribed the form of the writ, and any other must be void. 4 Chand., 93; 2 Doug., (Mich.), 498, 507—510, and authorities cited for defendant; 1 Texas, 17. In the case at bar, an amended writ was filed by leave of the court, but this could not make the void paper and void service good, as was held in Michigan, where the statute of amendments in such cases was broader than ours. 2 Doug., *supra.* The amended writ was never served. 3. The property was therefore not lawfully seized by the officer under the writ, and a lawful seizure was indispensable to enable him to maintain trespass, at least against *Whitney,* who has color of title. 4 Chand., 12; 1 id., 29; 3 Wis., 307-10, 636-40; 2 Gibbs, 418; 1 Cooley, 98; 6 Wheat., 119, 127; 6 Wis., 59; 16 Wend., 514.

*T. O. Howe,* for defendant in error :

The writ of attachment was not void, and the defects in it were *amendable,* and have been amended upon the order of the court having jurisdiction of the writ. R. S., 1849, chap. 100, sec. 1; 1 Cow., 38; id., 141; id., 309; id., 413. Cases are cited on the other side, where courts have refused to amend the writ of *capias ad res.* as to the return day, but they were under statutes different from ours as to amendments, and rest upon a reason peculiar to themselves. That writ, if defective as to the return day, is held void " for the danger of long imprisonment by delaying to return process to which the defendant might have a good defense." 1 Cow., 38; 2 Ld. Raymond, 775; 3 Wils., 341; *Parke vs. Heath,* 15 Wend., 301. But under our statute every kind of process, except the *capias ad res.,* may be amended in any respect; even that writ may be amended in any respect except as to the return day, and may be amended as to that, unless the defendant has been arrested. R. S. 1849, chap. 100, secs. 1 and 3; *Parke vs. Heath, ubi supra.* 2. But if the amendments were made improperly, they were actually made under an order of the court, and that order is not a nullity, and binds all parties

and privies. The Christies, who were not before the court, may not be bound by it, but Brunquest, who was before the court, and *Whitney*, who claims under him, are bound by it until it is reversed. So much seems to be conceded by the court in the case cited on the other side from 13 Pick., 90. See 6 Vt., 509; 4 Bibb, 508; 4 Rawle, 273; 9 Serg. & R., 12; 6 Watts, 398; id., 492; 6 Pick., 483. 3. But the case of *Morrow vs. Christie & Co.* has gone into judgment of a court of general jurisdiction, and when the judgment is offered in evidence, it will be presumed that the court which pronounced it had jurisdiction, especially as the law gave it jurisdiction of the writ and of the subject matter of it. If it be objected that two of the defendants were not served with process, the answer is that the defendants were sued as joint debtors, and service on all was not necessary to bind the joint property (R. S., chap. 124, sec. 11); much less was service on the Christies necessary to bind Brunquest, who was in court, and *Whitney*, to whom he sold. 4. It is objected that the writ was void because the affidavit was defective.. (1.) The affidavit was good. This was decided by the circuit court for Brown county in that very case, upon the motion of Brunquest himself, who was the vendor of the plaintiff *Whitney*, and is therefore *res adjudicata*. That court undoubtedly had jurisdiction of that motion, and the decision binds the parties and privies. *Swiggart vs. Harber*, 4 Scam., 364; *Warburton vs. Aken*, 1 McLean, 460; *Voorhees vs. Bank*, 10 Peters, 449; *Toland vs. Sprague*, 12 id., 300; *Granger vs. Clark*, 9 Shep., 128. (2.) But if the sufficiency of the affidavit were an open question, this court would hold it sufficient. The statute under which the writ issued was remedial. Sedg. on Stat., 41; Dwarris on Stat., 478. Remedial statutes should be favorably construed to advance the remedy. Dwarris, 632; Cowp., 382, 391; 3 Dow, 15; 2 Ohio St., 431; 9 Johns., 147; 3 Coms., 479; *White vs. Carpenter*, 2 Paige, 217—229. If the words of the affidavit are in substantial compliance with the terms of the statute, or necessarily and properly imply the case provided for by it, it is sufficient. 11 Barb., 520; 7 Miss., 452; 8 Ala., 171; 6 How. (Mich.), 254; 12 Sm. & M., 723; 1 Ala., 199; 19 Ga., 84; *Parmelee vs. Johnson*, 15

January Term, La., 429; *Bank of Ala. vs. Berry*, 2 Humph., 443; *Flower*
1862.

*vs. Griffith*, 12 La., 345; Drake on Att., § 106. (3.) But if
WHITNEY et al. the affidavit were defective, and if *Whitney* and his grantor
v.
BRUNETTE. were not estopped by the adjudication of the circuit court,
neither the writ nor the execution of it is necessarily to be
held void. If justice requires it, the proceedings may be
amended by annexing a new affidavit. R. S. 1849, chap. 100,
secs. 1 and 3; 1 Burrill's Pr., 97; Drake on Att., § 113; 1
Hill, 204; 19 Wend., 632; 20 id., 673; Locke on Foreign
Att., 5; 6 Vt., 479.

March 15.    *By the Court*, PAINE, J. This was an action of trespass
for taking lumber. It appears that the lumber had been cut
by Christie & Co. upon the lands of the United States, and
it was seized by the Marshal of the United States and sold
by him, under the direction, as it was claimed, of the proper
authorities at Washington. At the sale it was bid off by
Brunquest, one of the firm of Christie & Co., who immedi-
ately contracted to sell it to the defendant *Whitney*, the lat-
ter advancing the money paid to the marshal. The bill of
sale was made by the marshal to Brunquest, and very soon
afterwards he executed a bill of sale to *Whitney*, but not un-
til the lumber had been attached in a suit commenced by Eli-
sha Morrow against Christie & Co. *Whitney* afterwards re-
plevied the lumber from the sheriff in a suit commenced in
the United States District Court, which was afterwards dis-
missed for the reason that the property was taken from the
custody of the sheriff, and it was for that taking, under the
writ of replevin, that this suit was brought by the sheriff.

Many exceptions were taken on the trial, and many ques-
tions discussed by counsel in this court, but the conclusion
to which I have arrived upon the principal question, that is,
the validity of the attachment itself, will render it unneces-
sary for me to consider any other. It is clear from the evi-
dence that at the time the marshal's sale was made, the
attaching creditor, as well as the parties concerned, consider-
ed the sale valid. *Whitney* supposed he was acquiring title
through that sale, and Morrow's anxiety to get his attachment
served after the sale to Brunquest, and before the latter could

January Term, 1862.

WHITNEY et al.
v
BRUNETTE.

convey to *Whitney*, which purpose was evidently aided by the marshal, shows that he aimed at seizing the interest which Brunquest acquired through that sale.

But that idea is now abandoned by his counsel, who say that no authority was shown for the marshal to seize and sell the property in behalf of the United States, and this being so, although the evidence proves it to have been cut upon the lands of the United States, still it must be treated as the property of Christie & Co., in whose possession it was found, until some valid assertion of the right of the government. And therefore it is said that the attachment would hold it as the property of Christie & Co. I think this court very clearly intimated, when the case was formerly here, that this position could not be sustained, and that if it was shown that the title to the property was really in the United States, that would be a defense to this action, whether the marshal had any authority to sell it or not. 3 Wis., 635-6. But without determing whether or not this theory is correct, I may say that it appears to me entirely immaterial in this case. For whether the lumber at the time of the sale by Brunquest to *Whitney*, was his individual property, acquired through the sale by the marshal, or was the property of Christie & Co., it was equally liable to attachment by the creditors of the company, and equally liable to sale by himself. So in either case the decision turns upon the validity of the attachment. Was it valid or invalid? It is not difficult to see that the preliminary proceedings upon which it was issued were not in compliance with the statute in force at that time. Indeed, the counsel for the plaintiff would hardly contend that they were. The affidavit is substantially defective. The statute, R. S., 1849, chap. 112, required the affidavit to state the amount of the indebtedness " over and above all legal set-offs." Section 3 expressly provided that no writ should be issued, " unless the *amount stated in such affidavit*, as due to the plaintiff, *over and above all legal set-offs*, shall exceed the sum of one hundred dollars."

The affidavit in this case simply states that the defendants are indebted to the plaintiff in the sum of five thousand dollars, without saying " over and above all legal set-offs."

For aught that appears there might have been set-offs enough to extinguish the entire claim. The statute also requires the affidavit to state that the " debt is due upon contract express or implied." This affidavit does not state that the debt is due at all. That these are material defects is too clear for argument.

The writ itself was also defective, in not containing any direction to summon the defendants, as required by section 4; and it was so held by this court, 8 Wis., 633, without determining however whether it was absolutely void. But according to the uniform current of authorities upon this subject, I understand that such defects render the writ void. The proceedings by attachment are special statutory proceedings, and the statute must be substantially, if not strictly and exactly complied with, to give the court or officer issuing the writ jurisdiction. The following are a few of the many authorities that might be cited, sustaining this position. *Quarles vs. Robinson*, 1 Chandler, 31; *Greenvault vs. Bank*, 2 Doug. (Mich.), 508; *Buckley vs. Lowry*, 2 Gibbs, 418; *Wilson vs. Arnold*, 1 Cooley, 98; *Thatcher vs. Powell*, 6 Wheat., 127; *Shivers vs. Wilson*, 15 Har. & J., 130; Drake on Attachments, § 4 *et seq.*

There is one class of statutes upon the subject of attachment, which allow certain officers to issue the writ when they are satisfied by affidavit of certain facts. Another class allows the writ to issue only upon affidavit stating certain facts. This distinction is noticed in Drake on Attachments, § 86. In the former class it is said that the action of the officer is partly judicial, but in the latter merely ministerial. And it is obvious that a defect in the jurisdiction must be more readily ascertained in the latter than in the former, for the reason that its much easier to see whether the affidavit states the facts required, than to see whether the officer was satisfied of those facts.

Where the officer is required to be satisfied of the facts, it has been held that if the affidavit contains some proof of every essential fact, though slight and insufficient, yet the officer has jurisdiction, and the writ if issued will not be void. But if there is a total defect of proof upon any essential

point, then the writ would be void. *Staples vs. Fairchild*, 3 Coms., 41.

.But our statute belonged to that class which did not require any judicial action of the officer, but allowed the writ to issue only upon an affidavit stating specifically certain facts, and by all the authorities, when such affidavit fails to state every material fact, the writ is void.

But it is said that the defect might be amended, and that it was subsequently amended by leave of court. I think several answers may be made to this position.

It is true, the statute of amendments then in force was very broad and liberal. It provided that the court in which any action was pending, might "amend any process, pleading or proceeding in such action, either in form or substance, for the furtherance of justice," &c. But I think this relates only to such defects as do not render the process absolutely void. There must be something to amend, and a void writ is a nullity. To amend in such a case would be to create the writ anew, giving it a retroactive effect. *Bunn vs. Thomas*, 2 John., 190; *Burk vs. Barnard*, 4 id., 309; *Bell vs. Austin*, 13 Pick., 90; *Garner vs. Van Alstine*, 9 John., 386; 4 Cow., 49; *Kyles vs. Ford*, 2 Rand., 4.

But a further answer is, that even if a void writ can be amended, yet no sufficient amendment was made. The writ itself was amended by inserting a return day and a direction to summon the defendants, but the amended writ was never served; and no amendment at all was made to the affidavit. This, as I have already attempted to show, was so fatally defective as to render the writ void; and even if an amendment might relate back so as to help a seizure of property before the amendment, yet if such amendment was not made, the writ must remain void.

A still further answer is, that if a void writ can be helped at all by amendment, it should only be allowed that effect as between the parties to the proceeding, and not so as to cut off intermediate rights acquired by third parties. *Witte vs. Meyer*, 11 Wis., 300, and cases cited.

But it is claimed that this matter is *res adjudicata*, for the reason that Brunquest subsequently made a motion to set

aside the attachment on account of these defects. But the defendant *Whitney* was no party to that suit, and if the attachment was void, it was as though there had been no attachment. The property was just as liable to be sold by Brunquest as though it had not been taken by the sheriff. And if he did sell it, in the absence of fraud, the purchaser would acquire a good title, or any other creditor might have seized and held it upon a valid writ; and if other rights did thus intervene, they could not be barred by a subsequent motion made by Brunquest in a suit to which they were not parties.

It is true that privies, as well as parties, are bound by a judgment. But I do not understand that rule to go so far, as to hold purchasers bound by subsequent litigation in respect to the property between their vendors and others. Privies, within the rule, are those who subsequently to the litigation succeed to the rights of the parties. And here, if the decision on the motion made by Brunquest to set aside the attachment, is to be placed on the same footing with a judgment, then the making of that motion was the commencement of the litigation for that purpose, and the decision ought to conclude only those who succeeded to Brunquest's rights afterwards.

But I think the true answer to this position is, that the decision of a court, in a proceeding of which it has not jurisdiction, that it has jurisdiction, does not give it jurisdiction. This would be readily admitted in most cases. Suppose an action brought before a justice of the peace, over which, by law, he had no jurisdiction. Suppose the record showed a motion made to dismiss the action for that reason, which was overruled by the justice, would that give him jurisdiction, or prevent the validity of the judgment from being questioned collaterally? It seems to me clearly not. And I suppose the same is true of the decision of any other court, where its want of jurisdiction is conceded. Upon any other principle, the decision of any tribunal not having jurisdiction, in favor of its jurisdiction, would give its judgment equal validity with that of a court having jurisdiction. The question in every such case is, Was there juirsdiction? and not, Did the court assuming to exercise it, decide that there

was?  And the power to decide upon its jurisdiction is not
the very jurisdiction in question.  For every court has this
power, and if that gave it jurisdiction, it would be the duty
of every court in all cases to decide in favor of its own ju-
risdiction, for the very power to decide at all on the question
would show that it had the jurisdiction, which is an absurd-
ity.  If therefore the decision refusing to set aside the at-
tachment was binding upon Brunquest, it was not because
the court actually had jurisdiction to issue the attachment,
but because, having jurisdiction over him after his appearance,
and he having submitted that question to the court, its decis-
ion made the matter *res adjudicata* as to him.  And in speak-
ing of the question of jurisdiction, I refer, of course, only to
the attachment, the jurisdiction of which is entirely distinct
from that of the suit to recover the judgment against the
debtors.  The court had undoubted jurisdiction over the
latter.  And if the defendants were served with process or
appeared, the court would have complete jurisdiction, for the
purpose of rendering a judgment, without reference to the
validity of the attachment.  But to render this valid, so as
to give the officer any such right to the property as to enable
him to sustain this action, the statute must be complied with.
As this was not done, I think the attachment was void, and
the judgment should be reversed.

DIXON, C. J.  I agree that the judgment below must be
reversed, and concur with Justice PAINE upon the principal
points in decision; but as to others which he discusses and
apparently sanctions, and which I do not deem necessary to
a determination of the case, I wish to withhold my assent.

I agree, for the reasons stated, that by the course of decis-
ions in this state, the writ of attachment was void, and that
the defendant in error acquired no lien upon the property
by virtue of his supposed levy under it.  This being so, I
think it unnecessary to decide whether the court in which
the action was pending, could amend so as to make it valid
between the parties from the beginning, or whether the defects
were cured by the subsequent appearance and proceedings
on the part of Brunquest.  Grant that the court possessed

and properly exercised the power of amendment, or that Brunquest is now concluded by his appearance, and the judgment of the court upon his motion, from questioning the validity of the writ, still I am of opinion that those circumstances can have no influence upon the rights of the plaintiffs in error, who were strangers to that proceeding. I think, therefore, that the questions made upon them are unnecessary to a full determination of the present controversy, and that they cannot properly be considered. The writ being void, it is obvious that *Brunette* was, in the first instance, as against Brunquest, or what is the same, Christie & Co., or whosoever else may then have had the actual possession of the timber, a mere wrong-doer in seizing it; and that as between him and the person dispossessed, his possession was tortious and wrongful, and so continued until the injury was waived by the person lawfully entitled, or the defective process cured. It was as if he had taken the lumber unaided by anything in the semblance of legal process. The seizure was a naked trespass, for which he was at once liable to an action by the person whose possession he invaded. And it is immaterial which of the several parties to the transaction then had the possession, whether Brunquest alone, Christie & Co., or the marshal. It was clearly with one of them. Christie & Co. cut and manufactured the lumber upon the lands of the United States; the marshal, claiming to act by authority of the latter, seized and sold it to Brunquest, who was a member of the firm; Brunquest sold it to *Whitney*. The sale to *Whitney* was for a valuable consideration, and made after the seizure by *Brunette*, and while he was in possession, but before the writ was amended and before Brunquest had appeared in the action. This is putting the case in the most favorable attitude possible for *Brunette*. Two questions then arise: Did *Whitney* acquire a legal right to the property as against *Brunette*? Was it competent for Brunquest, by his subsequent conduct in the attachment suit, to change *Whitney's* legal relations? Viewing *Brunette* in the light of a mere trespasser, the answer to the first becomes very easy. His wrongful possession constituted no obstacle to a sale by Brunquest. The formalities

prescribed by the statute of frauds being complied with, act-
ual delivery was unnecessary to pass the title. *Whitney*
therefore acquired a valid title, legal or possessory, to the
property as against *Brunette*, unimpeachable, except for
fraud, by the creditors of Brunquest or of Christie & Co.
And here I may observe that it is a matter of no import-
ance whether the marshal was authorized to sell or whether
he was not. If he was, *Whitney* acquired the absolute legal
title, good against all the world; if not, then the possessory
title of Christie & Co., the original holders, which was good
against all but the true owners—the United States. This
possessory title Brunquest, as a member of the firm of
Christie & Co., had authority to convey. In the one case
*Whitney* combined in himself both the legal and possessory
titles; in the other he had the possessory title; and which, is
immaterial, since either, except it be impeached for fraud,
is a sufficient answer to the claim of *Brunetie*, who in no
way connects himself with the title of the United States.
For the purpose of testing his claim, the right of possession
acquired through Christie & Co. is to be regarded in all re-
spects equivalent to the legal title.

I answer the second question in the negative. I do not
think it was competent for Brunquest, by his subsequent ap-
pearance and conduct in the suit, to change *Whitney's* legal
relations to the property. He might waive objections and
cure defects so far as it concerned himself, or perhaps
Christie & Co.; but he could not affect or impair the previ-
ously vested rights of *Whitney*. These were independent
of his acts or consent, and must be determined upon the
facts as they existed at the time he purchased. If then his
title was perfect, nothing which afterwards occurred with-
out his knowledge and consent can be permitted to divest
it. Brunquest could act for and bind himself, but he had no
authority to bind his vendee. The doctrine of relation, so
often and so justly applied between parties to actions, by
which subsequent acts are carried back to the commence-
ment of the suit, is inapplicable here. The intervening
rights of purchasers and others, lawfully acquired, cannot be
thus undermined and destroyed. If they could, very great

injustice would be the consequence. The parties to the suit might combine to effect the fraud. Whether *Whitney* had notice of the attachment does not appear. The inference is that he had not. In such cases the injustice of giving a retroactive effect to the subsequent proceedings, and holding him bound by them, is very apparent. But if he had actual notice he might still purchase. It could only have been urged as a circumstance strongly indicating that the transaction was fraudulent as to creditors. Hence we need not inquire into the power of the court to amend before Brunquest appeared, or the conclusiveness of the order denying his motion to quash. Upon neither of these questions am I now prepared to assent to the views expressed by Justice PAINE. However they may be determined, we must still go behind them, and look to the position of the parties as they were when the sale was made.

This view of the rights of *Whitney* is sustained by many adjudged cases. Like questions have frequently arisen between different attaching creditors of the same debtor, where the senior writ has proved defective and void. It has invariably been held in such cases that the junior attaching creditor, whose writ is valid, has precedence; and that too, though the attachment debtor may have appeared in the first action and waived defects, or confessed judgment, before the court is called upon to decide the controversy between the creditors. The junior attacher may move to set the senior writ aside. *Gardner v. Hust*, 2 Rich., 601; *Walker v. Roberts*, 4 Rich., 561; *Barnet's Case*, 1 Dallas, 152; *Kennedy v. Baillie*, 3 Yeates, 55. The same rule prevails in Massachusetts, where the senior attaching creditor will not be permitted to amend his writ or change his cause of action to the prejudice of a subsequent attaching creditor, or if he does, his attachment is vacated. *Fairfield v. Baldwin*, 12 Pick., 388; *Denny v. Ward*, 3 id., 199; *Price v. Jackson*, 6 Mass., 242. And in New York, where void judgments are sometimes allowed to be amended and perfected, *nunc pro tunc*, it is never permitted so as to interfere with the rights of other judgment creditors, which may in the meantime have attached. *Lawless v. Hackett*, 16 John., 145;

*Davis v. Morris*, 21 Barb., 152; *Johnston v. Fellerman*, 13 How., 21; *Von Beck v. Shuman*, id., 472. "This court has no right," says Judge HARRIS in the last case, " to authorize a new judgment to be entered under the form of an amendment, which shall take priority over other judgments subsequently recovered." And it makes no difference that the judgment debtor acquiesces or makes no objection ; the judgment will still be vacated at the instance of the junior creditor. *Plummer v. Plummer*, 7 How., 62; *Schoolcraft v. Thompson*, id., 446; *Chappel v. Chappel*, 2 Kern., 215. If the courts will so carefully inspect and control their proceedings and judgments to protect the rights of intermediate judgment and attachment creditors, they certainly cannot fail to do so to guard those of an intervening purchaser for value, whose claims stand upon a much more solid foundation.

For these reasons I concur in the judgment of reversal.

Judgment reversed, and new trial awarded.