NACHTRIEB *v.* STONER.

NEW TRIAL — *damages in trespass de bonis.* Where it appears that the defendant procured an inferior court to issue an attachment in a case not warranted by law, and to give judgment upon constructive service for a fictitious demand, and sell property of plaintiff of the value of $300, a verdict of $750 damages is not excessive.

POSSESSION *in trespass de bonis.*  In trespass *de bonis* the plaintiff must show, that at the time of the alleged trespass he was in possession of the property, or that he had the right to the possession, and an outstanding possession in a third person, with the right to retain it until the payment of indebtedness or the happening of some other event will defeat the plaintiff's action.

POSSESSION OF PLEDGEE *extinguished by payment.*  Where the plaintiff pledged property to a third party to secure certain indebtedness, due from him to such party, and the defendant, in order to levy a writ of attachment upon the property, paid to the pledgee the amount due him from the plaintiff, when such payment was made the right of possession reverted to the plaintiff, and he may maintain trespass for the property.

POSSESSION OF PLEDGEE *determined by setting up adverse title.*  In such case the defendant, having set up a title inconsistent with the lien, cannot claim to have acquired the pledgee's right of possession, and hold under the lien.

TRESPASS — *justification under process of inferior court.*  Whoever justifies or asserts any right under the sentence or judgment of a court of inferior jurisdiction ought to be required to show the substantial regularity of its proceedings at every step.

ATTACHMENT WRIT — *which recites no cause, is irregular.*  That the defendants reside out of the county is no ground for issuing an attachment, and a writ, in which this is recited as the cause of attachment, is irregular on its face.

TRESPASS *against plaintiff in attachment — when proceedings irregular.*  Where the proceeding was before a justice of the peace, the cause of attachment set out in the affidavit was insufficient, and it was stated in the writ that the defendants reside out of the county ; the plaintiff who procured the writ, the justice of the peace who issued it, and the officer who executed it, are liable to the defendants in trespass.

*The affidavit being defective,* the rule is not affected by the power of amendment given by statute, for the court does not know that the facts exist upon which a proper affidavit may be made.

If the affidavit had been sufficient and the writ had falsely recited it, the court might incline to a different opinion.

## *Error to Probate Court, Lake County*

THE record of the court below consisted of certified copies of the papers filed in that court, together with some informal minutes of the proceedings of the court.

The judgment was in the following form :  " Thereupon, judgment is entered in favor of the plaintiff, William Stoner, and against the defendant, Charles Nachtrieb ; that the said plaintiff have and recover of the said defendant the sum of

$750, being the damages assessed by the jury in said case, with costs."

At the trial the plaintiff gave in evidence that defendant, on the 10th day of November, A. D. 1870, filed an affidavit and bond with George B. Berry, a justice of the peace of Lake county, and that Berry thereupon issued a writ of attachment against the plaintiff, William Stoner, and one Thomas Murphy, which writ was levied on the two mares described in the declaration, and was returned without personal service on Stoner or Murphy ; that the cause was continued by the justice at the return day of the writ, and notices were posted as directed by the statute ; that, upon the adjourned day, said justice of the peace gave judgment against Stoner and Murphy, and in favor of Nachtrieb, for $300 and costs of suit; that the two mares were sold under said judgment to one George Holger, who was requested to purchase them by Nachtrieb.   The plaintiff was sworn, and testified that he purchased the mares of Murphy, on the 1st of October, 1870 ; that at that time one of the mares was in charge of John Burnett, and we directed him to take charge of the other one ; that Burnett had charges against Murphy of $15, and there was an understanding that Burnett was to keep the mare till he got his pay ; that the mares were worth $300 ; that he did not hear of the suit of Nachtrieb against Stoner and Murphy, until about the first of April ; that witness did not, nor did witness and Murphy owe Nachtrieb any thing at the time of the commencement of the suit before Berry.   Thomas Murphy testified to substantially the same facts.

John Burnett testified that he delivered one of the mares to the constable on payment of his charges, which amounted to $15.   The plaintiff also put in evidence the affidavit and bond, filed with the justice of the peace, and also the writ of attachment issued by him.   In the affidavit it was alleged : " That Thomas Murphy and William Stoner have departed for the purpose of defrauding their creditors, and are about to remove their property to his, the said Charles Nathrop's, disadvantage and loss, with the intent of placing it beyond the

reach of their creditors." The bond was made to the constable as obligee therein. Plaintiff also gave in evidence a transcript of the docket of the justice of the peace in the case of *Nachtrieb* v. *Stoner and Murphy*.

In the writ of attachment the cause recited for the issuing thereof was, " that Thomas Murphy and William Stoner reside out of the county." The defendant gave in evidence that Murphy and Stoner bought a ranche of him for $300, and that the amount was still unpaid ; that he commenced suit before the justice of the peace in good faith, and that the mares were worth $240.

The court refused to instruct the jury : " That if any person had a lien upon the property named in the plaintiff's declaration, by which any sum of money was to be paid by the plaintiff before he could reduce the same into his possession, they should find for the defendant."

Upon request of the plaintiff, the court instructed the jury : "That by his record, as appears in evidence, the magistrate had no jurisdiction which would justify the seizure of any property of William Stoner, and if the jury believed, from the evidence, that the horses in question were seized in that suit under the affidavit, writ and bond referred to, it does not amount to a justification, and the jury should find for the plaintiff." There were other instructions which it is not necessary to refer to.

Mr. M. BENEDICT, for plaintiff in error.

Messrs. HUGHES & MORRISON, for defendant in error.

WELLS, J. The record, which has been certified to us, contains many gross irregularities, and the original appears to have been made up without the slightest knowledge of what matters the record of a court ought or ought not to contain. Nevertheless, sufficient appears to show that the judgment complained of was given at a term of the probate court, convened, constituted and held in accordance with law. The objections urged on the part of the plaintiffs in error in this respect are therefore not well taken.

Neither are we disposed to interfere with the judgment in respect of the damages awarded by the jury. The plaintiff in the court below complained in effect, that the defendant had procured an inferior court to issue an attachment against the plaintiff's estate in a case where such process was unwarranted by law, and to give judgment and direct a sale of the estate upon mere constructive notice of the proceeding, he being then a resident of the territory, and entitled to actual notice by service of process; that by virtue of the sale so ordered, the defendant had possessed himself of, and converted to his own use, property of the plaintiff to the value of several hundred dollars, and that all this was done in the prosecution of a pretended claim of indebtedness which never existed. The jury have found that the facts are as asserted by the plaintiff; the evidence warrants the finding, and, as we think, makes a strong case for the award of punitory damages, and the amount allowed by the jury does not seem to us to be excessive.

The circumstance, that before the alleged trespass a portion of the property was in the possession of a third person who had a special property therein by way of lien or pledge, does not, as we think, have the effect to defeat the plaintiff's action or modify the rule of damages. True, it is, in general, that in *trespass de bonis* the plaintiff must show, that at the time of the trespass complained of he had actual possession of the goods, or had property therein, either general or at least special, with the right to the immediate possession, and an outstanding possession in a third person, with the right in such person to retain it until the discharge of an indebtedness or the happening of some other condition might, with reason, be said to disable the general owner from bringing trespass. *Gauche* v. *Mayer*, 27 Ill. 134; *Thorpe* v. *Burling*, 11 Johns. 285; *Gay* v. *Smith*, 38 N. H. 171.

For in such case the interest of the general owner is merely reversionary and not present, and for an injury to such interest case lies but not trespass. But, in the present case, the demand for which the goods had been held in pledge

was paid off by the plaintiff in the attachment, now plaintiff in error, before the levy, which involves the trespass complained of, and we think this, by construction of law, restored the general owner to his possession, for, though the pledgee of goods may clearly enough transfer possession thereof to another, as his servant or bailee, without waiver of his lien, and though, as we conceive, any third person may advance to the pledgee his demand, receiving possession of the goods as his security, and may lawfully retain such possession until repaid his advances, yet the authorities appear to be uniform, that if the pledgee or lienholder set up any title or claim inconsistent with or independent of the lien, this will amount to a waiver thereof.    3 Pars. on Cont. 244.

Therefore, inasmuch as the possession of the constable who levied the attachment complained of was from the beginning independent of and hostile to the lien by which the property had before been held — the very purpose for which the money was advanced to the pledgee being to enable the officer to proceed with the property in a manner inconsistent with the lien — it cannot be said that this incumbrance or special property followed the goods into the custody of the constable.    On the contrary, by the payment of the amount for which the goods had before been held, the lien was dissolved and the right to the immediate possession was *eo instanti* restored to the general owner.

There remains to be considered the question to which the argument was chiefly directed, whether the plaintiff's action was rightly conceived, that is to say, whether trespass lies here or case.    Upon this question we are not without authority, though it is to be regretted that the authorities are not in strict accord.    It appears to be well settled, that if an inferior court assume to extend its process to a case wherein it is not warranted by law, both the magistrate and the party who instigates the unlawful proceeding are liable in trespass, and that although the cause or matter be within the jurisdiction of the court or magistrate in general, yet if there be some prerequisite prescribed by law to the exer

cise of such jurisdiction, and the process issue without such prerequisite, all parties concerned, save the ministerial officer, where the process fails to disclose irregularity upon its face, are trespassers.

*Vosburg* v. *Welch,* 11 Johns. 175; *Curry* v. *Pringle,* id. 444; *Adkins* v. *Brewer,* 3 Cow. 206; *Reynolds* v. *Orvis,* 7 id. 271; *Grumon* v. *Raymond,* 1 Conn. 40; *Polk* v. *Slocum,* 3 Blackf. 422; *Barkeloo* v. *Randall,* 4 id. 476; *Davis* v. *Bush,* id. 330.

Some of the cases to which I have referred are directly to the point that the affidavit and bond required by statute are essential prerequisites to the issuance of the writ of attachment, and that without these no jurisdiction is acquired; and this seems to be adjudged also in *Wight* v. *Warner,* 1 Doug. (Mich.) 384; *Mantz* v. *Handby,* 2 Hen. & Munf. 308; *Clark* v. *Roberts,* Breese, 285; *Matter of Faulkner,* 4 Hill; *Staples* v. *Fairchild,* 3 Comst. 41; *Shivers* v. *Willson,* 5 Harr. & J. 130; and in other cases which were cited at the bar.

In some courts, indeed, it has been held, both where the question arose directly and where it arose in a collateral proceeding, that a failure to comply with the statutory prerequisites will avoid the writ and all subsequent proceedings even in a court of general jurisdiction. *Whitney* v. *Brunette,* 15 Wis. 68; *Willson* v. *Arnold,* 5 Mich. 98; *Greenvault* v. *Farmers' Bank,* 2 Doug. (Mich.) 498.

I do not discover that any of these cases are upon statutes, essentially different from our own so far as concerns the requirements of the affidavit and security, or so far as relates to the effect and consequences of an omission in this respect; and though we are not prepared to hold, with the cases last cited, that defects in the affidavit or bond given shall, in superior courts of general jurisdiction, invalidate the subsequent proceedings, yet we think this may well be asserted as the rule where the proceeding is in an inferior court, not of record (at least where the defect is a substantial one), whether the question arise directly or collaterally; for as to these latter courts no one ought to be at liberty to

assume that their proceedings are regular either in form or substance; whoever justifies or asserts any right under the sentence or judgment of such a court ought to be required to show the substantial regularity of its proceedings at every step.   There ought to be no exception to this rule save in favor of the ministerial officer who executes process regular upon its face.   The cases of *Voorhies* v. *Bank of the United States*, 10 Pet. 449 ; *Cooper* v. *Reynolds*, 10 Wall. 320 ; *Ludlow* v. *Ramsey*, 11 id. 582, have been sometimes thought to assert the doctrine that jurisdiction may be acquired by seizure of the estate of the defendant, so as to empower the court, under whose process the seizure is made, to award sale of such estate whether the requirements of the law antecedent to obtaining the writ have been complied with or not.

But in the first of these cases the court expressly affirm the principle that " all the requisitions of the law are conditions precedent, which must be performed before the power of the court to order a sale can arise," and the title there in controversy was sustained upon the ground that the statute under which the attachment proceeding was had did not prescribe what should be received as evidence of compliance with its requirements in this respect, or direct that any record of such compliance should be preserved, and the question being, therefore, left to depend upon those general principles of law by which the validity of sales under judicial process are determined, and it appearing of record that the writ issued was that prescribed by law, or, to use the language of the opinion, "the same as prescribed by law," the court thereby acquired jurisdiction of the cause of action and the property.   The record was silent as to whether the requisites of the statutes anterior to the issuing of the writ had or had not been complied with ; and, as we understand the opinion, the court supply the omissions of the record in this respect by the application of the maxim *omnia rite esse acta.*

So in *Ludlow* v. *Ramsey* the proceeding was by bill to vacate the sale for insufficiency of the affidavit.  The court

held the affidavit sufficient in substance, but referring to what had before been decided in *Cooper* v. *Reynolds*, and pursuing the doctrine of that case, say that the sole question is, whether the court obtained jurisdiction; that its general jurisdiction of such process is not denied; and that the writ of attachment in the particular case "appears to be in due form of law, and to have been regularly served upon the property, so that the court became fully possessed of jurisdiction in the case." So in *Cooper* v. *Reynolds*, MILLER, J., who delivered the opinion, says:

"It seems to us that the seizure of the property, or that which in this case is the same in effect, the levy of the writ of attachment upon it, is the one essential requisite to jurisdiction, as it unquestionably is in proceedings purely *in rem*. Without this the court can proceed no further; with it the court can proceed to subject that property to the demand of the plaintiff. If the writ of attachment is the lawful writ of the court, issued in proper form, under the seal of the court, and is by the proper officer levied upon property liable to attachment when such writ is returned into court, the power of the court over the *res* is established. The affidavit is the preliminary to the issuing of the writ. It may be a defective affidavit, or possibly the officer whose duty it is to issue the writ may have failed to observe all the requisite formalities, but the writ being issued and levied, the affidavit has served its purpose, and though a revisory court might see in some such departure from the strict direction of the statute sufficient error to reverse the judgment, we are unable to see how that can deprive the court of the jurisdiction acquired by the writ levied upon the defendant's property."

It appears to me, that while in the cases referred to the supreme court of the United States have gone much beyond the courts of most of the States in sustaining judicial proceedings of the character now under consideration, yet that they cannot, with accuracy, be said to go further than this, to wit: That defects in the affidavit or other preliminary steps shall be disregarded, if by a writ substantially perfect, and not showing upon its face any omission of the previous

requirements of the statute, the proper officer of the court has seized the estate of the defendant within the territorial jurisdiction. But I conceive it to be clearly the doctrine of these cases that there must be a perfect writ.

Under our system, it is true, a perfect writ upon a defective affidavit cannot be, for the statute requires the affidavit to be recited in the writ, but elsewhere the two may perhaps concur.

Now the present case is clearly distinguishable from the cases in the supreme court of the United States, in this: that, while in all of these the writ issued out of a court of general jurisdiction, and was fair upon its face, here the writ is out of an inferior court, and recites as the ground of its issuance that "oath has been made that the defendants reside out of this county," which was no ground in any case. The writ was, therefore, absolutely void, and would not have availed to protect even the ministerial officer who executed it.

It was argued at the bar, however, that no writ of attachment can, under our statute, be held void, whatever its defects; for, it is said, notwithstanding any deficiency therein, or in the affidavit or bond, the same may not be quashed, but, by the eighth section of the statute, shall be amended, and what is void cannot be made valid; and, therefore, it is concluded, absolute invalidity cannot be predicated of process which, by positive law, is susceptible of amendment.

This same distinction is frequently taken in the books, and seems, in some cases, to have been thought applicable to cases like the present — as in *Owens* v. *Starr*, 2 Lit. 230; and *Booth* v. *Rees*, 26 Ill. 48, in which latter case it was held that a writ of attachment, issued upon affidavit, averring the statutory causes upon information merely, should protect even the justice of the peace who issued it, and the plaintiff who procured it. But we conceive that the question, whether it may or may not be within the power of the court to allow an amendment of any particular process, is not, in all cases, decisive of the other question, whether

such process may or may not suffice to sustain a judgment given thereon. In the present case it cannot be said that the writ is amendable (and, therefore, voidable merely) in the sense in which the word is generally used in the books, for the defect here is such that there can be no amendment of the writ, without a new affidavit of facts not now appearing; and there cannot be such further affidavit unless the requi site facts exist, which does not now appear. Therefore it cannot now be known that the statutory power of amendment can ever be called into exercise, or the writ ever be amended; and we are not able to agree that one who has, to his own profit and his neighbor's injury, set in motion the process of the law " to which, by his own showing, he is not entitled, ought to be protected by that process;" because, possibly, upon a state of facts not shown, he might have obtained leave to correct his errors and perfect his writ, and so it was held in *Whitney* v. *Brunette.*

If the original affidavit had been sufficient, and the writ had falsely recited it, we might incline to a different opinion; but upon this record as it now stands, it does not appear that the defects in this process could have been corrected.

The judgment of the court below is affirmed, and the defendant in error will recover his costs in this court.

*Affirmed.*