———O———

NATHAN BRAY, et al., Respondents, vs. ROBERT McCLURY, et al., Appellants.

PER CURIAM, ADAMS, J.

1. *Attachment—Affidavit—Sale—Title.*—The affidavit attached to the petition in an attachment suit merely stated, that to the best of affiant's knowledge and belief defendant was a non-resident of the State. *Held*, that under such affidavit the court obtained no jurisdiction over the land attached, and that a sheriff's deed thereunder would be void and convey no title.

PER ADAMS, J.

2. *Statutory attachment—Not in rem.*—A statutory attachment suit is not a proceeding *in rem.* The property is no party to the suit, but is brought before the court in aid of the remedy against the individual sued.

3. *Judgment—Order of publication—General execution—Levy of on property attached—Irregular—Corrected here.*—A general judgment on an order of publication is void. But a general execution levied only on attached property is simply irregular, and may be corrected at any time by an amendment *nunc pro tunc.*

PER NAPTON and VORIES, J. J., concurring.

4. *Attachment—Affidavit—What sufficient to support a sale.*—Where an affidavit, issued in aid of an attachment under § 6 of the Attachment Act (Wagn. Stat., 182), fails to state that plaintiff has a just demand against defendant, and fails to state any amount as due to plaintiff after allowing all just credits and set-offs, all subsequent proceedings, including sale and deed of land sold under the attachment, are void.

PER WAGNER, J. dissenting.

5. *Attachment—Proceeding in rem.*—Attachment suits founded upon construc-
tive service are essentially in the nature of proceedings *in rem ;* and the seiz-
ure of the property, or obtaining possession of the *res,* is therefore the basis
of the court's jurisdiction.

6. *Attachment—Irregular affidavit—Subsequent proceedings not set aside collat-
erally.*—A defective or irregular affidavit in aid of an attachment, although it
might cause a reversal of the judgment in the attachment proceedings, would
not render the judgment or subsequent proceedings absolutely void. Where
there was a valid writ and levy of the attachment, a judgment of the court, an
order of sale, and a sale and sheriff's deed, the proceedings could not be set aside,
in consequence of· the irregularity, collaterally, in another suit.

7. *Attachment—Irregular affidavit—Sale—Deed—Title.*—An affidavit in aid of an
attachment, which merely states that defendant is a non-resident, is sufficient,
without more, to support the writ; and a levy of an attachment properly issued
thereunder, together with judgment sale and sheriff's deed, will carry title to
the property attached.

8. *Attachment—Publication—Judgment—Errors set aside, when—Erroneous exe-
tion will hold property collaterally.*—Where suit is begun by publication
and attachment, the judgment will bind only the property attached ; but a
general judgment in such case, although informal, is nevertheless valid till
reversed, and will authorize the issue of a special execution against the attach-
ed property. And a court will at any reasonable time correct such a judg-
ment by an entry *nunc pro tunc.* And a general execution issued in such case
against the property attached will bind it until reversed or set aside in a di-
rect proceeding, and cannot be impeached or drawn in question in a collateral
proceeding.

## *Appeal from Greene Circuit Court.*

*Crawford & Cravens, and Shafer & Duckwait,* for
Appellants.

I. The affidavit to the truth of the facts in the petition, and
the additional affidavit of non-residence of the defendants, ta-
ken together, constitute almost a literal compliance with the
statute. (Drake Att., Ch. 5, § 95.) The most important point
in the affidavit is the ground of the attachment, which is
here clearly stated. (Drake Att., Ch. 5, §§ 97, 98 ; *Ibid,* §§
106, 113 ; Vankirk vs. Wilds, 11 Barb., 524 ; Curtis vs.
Settle, 7 Mo., 452 ; Graham vs. Ruff, 8 Ala., 172 ; Wallis
vs. Wallace, 6 How., [Miss.] 254 ; 7 Humph., 210 ; 1 Sm.
& M., 503.)

9—VOL. LV.

II. The affidavit is not an element of jurisdiction, but merely a suggestion upon which the writ issues, and the entire absence of it would not render the proceedings void in a collateral proceeding. (Cooper vs. Reynolds, 10 Wallace, 308 ; Voorhees vs. Bank United States, 10 Pet., 449; Massey vs. Scott, 49 Mo., 278; Ludlow vs. Ramsey, 11 Wall. 587.)

The affidavit is no more a jurisdictional fact than the filing of a bond is ; both alike in the order of the statute precede the issue of the writ. A failure in either particular, it is conceded, would be grossly irregular and erroneous, and would be good ground of reversal either on appeal or writ of error ; but can be taken advantage of only by the defendant himself in one of the above ways, or *on motion to quash before judgment.* (Drake Att., Ch, 6, §§ 115, 143–144; Camberford vs. Hall, 3 McCord, 345 ; Wigfall vs. Byne, 1 Richardson, [S. C.] 412; VanArsdale vs. Krum, 9 Mo., 397 ; Beecher vs. James, 2 Scam., 462.)

III. The jurisdiction of the court attached by reason of the levy of the writ, and no subsequent error or irregularity in the proceedings either in the form of the judgment or the execution, could effect its validity in a collateral proceeding. (Hardin vs. Lee, 51 Mo., 241 ; Massey vs. Scott, 49 Mo., 278; Clark vs. Holliday, 9 Mo., 702 ; Cooper vs. Reynolds, 10 Wall., 308 ; Jackson vs. McCrea, 8 Johns., 362; Kempe's Lessee vs. Kennedy, 5 Cranch., 173 ; Fithian vs. Monks, 43 Mo., 502 ; Landes vs. Perkins, 12 Mo., 239 ; Reed vs. Austin, 9 Mo., 713 ; Draper vs. Bryson, 17 Mo., 71 ; McNair vs. Biddle, 8 Mo., 264; Coleman vs. McAnulty, 16 Mo., 176.)

*John S. Phelps,* for Respondents.

I. No writ of attachment can be lawfully issued by the clerk, unless an affidavit shall be made by the plaintiff or some one for him, and filed with the clerk, alleging some of the causes for which an attachment may issue, and that the plaintiff has a just demand against the defendant, stating the amount which the affiant believes the plaintiff ought to recover after allowing all just credits and set offs. Such affidavit substantially com-

plying with the law is a pre-requisite to issuing a writ of attachment, and without which the attachment and proceedings under it are void. (Drake Att., §§ 83, 84, 437; Cooper vs. Reynolds, 10 Wall., 319 ; Hardin vs. Lee, 51 Mo. 241; McCulloch vs. Foster, 4 Yerg., 162; Conrad vs. McGee, 9 Yerg., 428; Maples vs. Tunis, 11 Humph., 108 ; Staples vs. Fairchild, 3 Comst. 41.) Affidavit must positively state indebtedness and not inferientially. (Quades vs. Robinson, 1 Chandler, 29; Clark vs. Roberts, 1 Ill., 285; Pool vs. Webster, 3 Met., [Ky] 278 ; Whitney vs. Brunette, 15 Wis., 61 ; Talbot vs. Worth, 19 Wis., 174 ; Greenvault vs. Mechanic's Bank, 2 Dougl., 498.)

II. But the record (Merchants' Bank vs. Ferguson & Stephens,) shows the proceeding was not by attachment, but a proceeding to obtain a general judgment under Act of 1855 by publication. Affiant states in his affidavit, "the matters and statements contained in the foregoing petition he believes to be true," and that defendants "are non-residents of the State of Missouri, to the best of his knowledge and belief."

III. An affidavit for an attachment must positively state, 1st. That plaintiff has a just demand against defendant. 2nd. The amount he believes plaintiff ought to recover after allowing all just credits and set-offs. 3rd. That he has good reason to believe, and does believe, in the existence of some of the causes for which an attachment may issue.

IV. Plaintiff took his general execution and not a special execution, and the lands were sold on a general execution.

ADAMS, Judge, delivered the opinion of the court.

This was an action of ejectment, commenced in the Dade Circuit Court, for lands lying in that county, and taken by change of venue to the county of Greene. Both parties trace their title to John N. Ferguson as the original source,who was formerly seized of the premises. The record shows, that the Merchants Bank of St. Louis brought a suit by attachment against Ferguson and others on a bill of exchange in 1865 in the Dade Circuit Court. The petition was in the usual form,

verified by affidavit, as the practice act required at that time.

To the petition was appended an additional affidavit, merely stating that to the best of affiant's knowledge and belief the defendants were non-residents of the State. Upon the petition thus verified, and the additional affidavit of non-residence, a writ of attachment was issued, and was by the sheriff levied on the lands in dispute. An order of publication was made and duly published in a newspaper in pursuance of law. The defendants did not appear and were not served with a summons. At a subsequent term of the court a special judgment was rendered in the cause against the defendants and the attached property. On the margin of the record of this judgment a memorandum, "erroneous entry," is written. On a subsequent page is entered another judgment, which appears to be between the same parties and is in the form of a general judgment instead of a special one. Afterwards, the clerk issued a general execution, which was levied on the attached lands, and they were sold by the sheriff to the defendants, and they are the lands in controversy. A deed was made by the sheriff reciting the proceedings in the attachment suit, a rendition of the special judgment, and a sale thereunder, and was duly acknowledged. At the instance of the plaintiffs the court excluded this deed as evidence at the trial, and instructed, that the sheriff's deed offered in evidence was wholly void and conferred no title on the defendants to the lands sued for. A verdict and judgment were rendered for plaintiffs, and a motion for a new trial was overruled.

It is obvious from this statement that the main point here is, whether the writ of attachment and the proceeding thereunder were void, Before an attachment can issue, the statute law requires that the plaintiffs shall file an affidavit in the clerk's office of the court in which the suit is brought, stating that he has a just demand against the defendant and the amount thereof which the affiant believes the plaintiff ought to recover, after allowing all just credits and set-offs, and that he has good reason to believe, and does believe, in the exist-

ence of one or more of the causes, which according to the provisions of the statute would entitle the plaintiff to sue by attachment. (R. C., 1855, p, 240, §§ 5, 6.)   There was no such affidavit made in this case, although the statute requires it before a plaintiff is entitled to an attachment.   This requirement of the statute is jurisdictional, and not simply directory. The court or clerk has no jurisdiction to issue an attachment without the required affidavit.   The affidavit of non-residence was made to procure an order of publication, and contained none of the essential requisites of an affidavit for the writ of attachment.   As there was no affidavit at all filed for the purpose of suing out the attachment, it is unnecessary to discuss the question, whether a defective affidavit could be amended so as to sustain the attachment.   In my judgment that could be done ; but as that question is not in the case, it is unnecessary to decide it.

2nd.  But it is urged that as the writ of attachment was in fact issued and levied on the lands in dispute, that brought them before the court and gave the court full jurisdiction over them to render a special judgment, without regard to any prior or subsequent proceeding ; that this is in the nature of a proceeding *in rem*, and the land attached is the *res*, and the court can render a valid judgment for sale of the land without complying with any of the other requisites of the statute ; that the sale and deed of a sheriff would pass the title whether there was any affidavit at all, or any order of publication made or published.   This proposition is so monstrous, and would lead to such ruinous consequences, that I cannot yield it my assent. The authorities seem to be conflicting in the different States on this question.   Those affirming the proposition base their decisions on the doctrines of maritime law.   But there is very little analogy, if any, between attachment suits, which derive their existence exclusively from statutory law, and proceedings in admiralty.   In maritime cases, the ship or vessel libelled is the real party defendant.   The doctrine of the maritime law is, that the whole world is bound by the proceedings whether notified or not.   If notice is required, it is

merely directory and not necessary to give jurisdiction, and a judgment rendered against the ship or vessel, with or without notice, is binding, and a sale under it passes the whole title.

This doctrine is not applicable to a statutory attachment. The real suit is in favor of and against individual persons. The property itself is, in no sense of the word, a party to the suit, but is brought before the court as ancillary or in aid of the remedy against the real party, who is presumed to be the owner of it. The attached property does not represent the defendant, but is merely held in *custodia legis* to satisfy the debt that may be proven to exist against the defendant.

How can a judgment be rendered against the defendant's property, unless he is before the court by service of summons or personal appearance, or by constructive notice by order of publication duly published when that is required? The statute must be substantially complied with in order to render the jurisdiction complete. There must be first a petition and the necessary affidavit to give jurisdiction to issue the writ of attachment, and when the attachment is levied, the court may proceed to take care of the property, and if necessary, may sell perishable property and keep the proceeds of the sale in custody till final judgment. But to warrant any such judgment, the defendant must be brought before the court in the manner indicated by the statute, either by service of summons or appearance, or by an order of publication duly made and duly published. These are all jurisdictional steps, and not merely directory, to render the jurisdiction complete. I do not say that the Legislature could not order attached property to be applied to the payment of a debt of a non-resident without any notice at all. It has not attempted to do so, but has thrown these jurisdictional safeguards around it to be observed, before a defendant can be robbed of his estate by an *ex parte* proceeding.

A court of equity has the power to pass title to real estate within its jurisdiction. The first step required is to file a petition, describing the land to be acted on and where situated. That brings the land before the court, and makes it a case in

Bray, et al. v. McClury, et al.

the nature of a proceeding *in rem*. The land being the *res* is as much before the court as it is when attached, and the court has precisely the same jurisdiction over it. Can the court pronounce a decree divesting the title of the defendant, and vesting it in the plaintiff, without issuing any writ, and without any order of publication duly made and published, and without any appearance? Would not such a decree, if valid, be judicial robbery : and yet that is precisely the power contended for in attachment suits.

3rd. If there had been any authority to render any judgment at all in this case, the special judgment was the proper one, and a general judgment, simply on an order of publication, was void. The execution being general was only irregular. As it was only levied on the attached property, as to that property it amounted to a special execution, and the error might at any time be corrected by an amendment *nunc pro tunc*.

As there was no affidavit to warrant the attachment, the subsequent proceedings were void. This leads to an affirmance of the judgment.

Judgment affirmed. Judges Napton and Vories file a separate concurring opinion. Judge Wagner files a dissenting opinion. Judge Sherwood, having been of counsel, did not sit.

NAPTON, Judge, delivered the separate concurring opinion.

I concur with Judge Adams in regarding the affidavit required by the 6th section of the Attachment law as essential to give the clerk a right to issue the writ, and that this affidavit must substantially comply with the requirements of said section. The affidavit in this case is merely that the defendant is a non-resident; but it is not stated, that the plaintiff has a just demand against the defendant, nor does it state any amount as due to the plaintiff after allowing all just credits and off-sets. This is the very basis of the jurisdiction of the court. The fact that the defendant is a non-resident is a very unimportant one, if he really owes nothing to plaintiff, and the plaintiff's oath, that the defendant is justly indebted to him in

an amount stated, is essential to authorize the issuance of the writ. There is really no ground for an attachment, whether the defendant lives abroad, or otherwise has conducted himself so as to bring him within the provisions of the attachment law, unless there is a valid subsisting claim against him; and the statute has not allowed this attachment process on the mere filing of a petition, sworn to under the law as it formerly existed. For this reason, I concur in affirming the judgment. It is not necessary to give my opinion on the question of the publication, as it does not arise in this case. Judge Vories concurs in this view.

WAGNER, Judge, delivered the dissenting opinion.

This was an action of ejectment commenced in the Dade Circuit Court for the recovery of certain lands lying in that county. A change of venue was taken to Greene County, where a trial was had and judgment was rendered for the plaintiffs. Both parties trace their title to one John N. Ferguson, as an original source, who was formerly seized of the premises. The record shows, that in 1865 the Merchants' Bank of St. Louis brought a suit by attachment in the Dade Circuit Court against Ferguson and others on a bill of exchange. The petition was in the usual form, properly verified in conformity with the law as it then existed. To the petition was appended an additional affidavit, stating that to the best of the affiant's knowledge and belief, the defendants were non-residents of the State. Upon the petition thus verified and the affidavit of non-residence, a writ of attachment was issued, and was by the sheriff levied on the lands in controversy. An order of publication was also made against the non-resident defendants, notifying them of the commencement of this suit and the nature thereof. This order was properly published in a newspaper in pursuance of law. At a subsequent term of the court, a special judgment was rendered in the cause against the defendants, and an order made for the sale of the lands attached under a special execution. On the margin of the record of this special judgment is written " erroneous entry."

On a subsequent page of the record, and at the same term of the court, is entered another judgment between the same parties, and which appears to be in the same cause, which differs from the one already referred to in the fact that it is a general judgment instead of a special one. Afterwards, the clerk issued a general execution, which was levied on the lands attached, and they were sold by the sheriff to the defendant, and these are the lands now in controversy.

The deed made by the sheriff to the defendant recited the proceedings in the attachment, the rendition of a special judgment, and a sale thereunder, and was properly acknowledged. At the instance of the plaintiff, the court excluded this deed at the trial, and the defendant excepted. It also gave an instruction on the same side, that the sheriff's deed offered in evidence was wholly void and conferred no title upon the defendant to the lands sued for and was excluded from the jury.

The defendant asked an instruction, which was the converse of the one given for the plaintiff, which the court refused, and he has now brought the case here by appeal. The principal grounds now urged by plaintiffs' counsel in support of the judgment are: that the proceedings in the attachment suit were void, because there was no affidavit justifying them, and that the judgment and execution were general, and therefore wholly unwarranted by law.

The affidavit alleged the non-residence of the parties defendant according to the first sub-division of section one of the act respecting attachments. (1 R. C., 1855, p. 238.) But the 5th section of the same act, in defining what the affidavit shall contain, says, that it shall be made by the plaintiff, or some person for him, and shall state, that the plaintiff has a just demand against the defendant, and that the amount which the affiant believes the plaintiff ought to recover, after allowing all just credits and set-offs, is ——dollars, and that he has good reason to believe, and does believe, in the existence of one or more of the causes authorizing an attachment under the first section.

It is contended, that as the petition stated the essential facts required in the affidavit and was duly verified, that, in conjunction with the affidavit of non-residence, was a substantial compliance with the statute.   But we think there is some difficulty in maintaining this view.   The petition must state a cause of action, but the attachment is something distinct from, and in addition thereto. · The statute doubtless contemplated, that the affidavit for the attachment should be complete in itself, and contain all the specified requirements. But although we may regard the affidavit as informal and defective, it does not thence follow, that the subsequent proceedings which resulted in a judgment are entirely void.   Between the parties, upon an appeal or writ of error, they might have been reversible, but, in holding them wholly void on a collateral issue in a contest involving the rights of other persons, a different question is presented.   In Alexander vs. Haden (2 Mo., 228) it is held, that where a judgment is rendered in a suit by attachment on an affidavit not warranted by the statute, the judgment will be set aside for irregularity even after the lapse of several years.   But in that case there was a direct proceeding between the original parties to the suit.   No intimation was made that the judgment was an absolute nullity.

The principle has been so constantly acted upon, even from the earliest periods, that it has become axiomatic, that, when a judgment of a court is offered in evidence collaterally in another suit, its validity cannot be questioned for errors which do not affect the jurisdiction of the court that rendered it.   Attachment suits founded upon constructive service are essentially in the nature of proceedings *in rem*, and the seizure of the property, or obtaining possession of the *res*, is, therefore, the basis of the court's jurisdiction.

In the case of Cooper vs. Reynolds (10 Wall., 308,) it was decided, that the seizure of the property of the defendant under the proper process of the court, was the foundation of the court's jurisdiction, and that defective or irregular affidavits and publications of notice, though they might reverse the

judgment in such case for error in departing from the directions of the statute, would not have the effect of rendering the judgment or the subsequent proceedings void ; and that where there was a valid writ and levy, a judgment of the court, an order of sale, and a sale and sheriffs' deed, the proceedings could not be held void when introduced collaterally in another suit. The following language of Judge Miller in delivering the judgment is remarkably clear and precise :  " Now, in this class of cases, on what does the jurisdiction of the court depend ? It seems to us, that the seizure of the property, or, that which in this case is the same in effect, the levy of the writ of attachment on it, is the one essential requisite to jurisdiction, as it unquestionably is in proceedings purely *in rem*. Without this the court can proceed no further ; with it the court can proceed to subject that property to the demand of the plaintiff.  If the writ of attachment is the lawful writ of the court, issued in proper form under the seal of the court, and if it is by the proper officer levied upon property liable to the attachment, when such writ is returned into court the power of the court over the *res* is established.  The affidavit is the preliminary to issuing the writ.  It may be a defective affidavit, or possibly the officer, whose duty it is to issue the writ, may have failed in some manner to observe all the requisite formalities ; but the writ being issued and levied, the affidavit has served its purpose, and, though a revisory court might see in some such departure from the strict direction of the statute sufficient error to reverse the judgment, we are unable to see how that can deprive the court of the jurisdiction acquired by the writ levied upon defendant's property."  The same doctrine was re-asserted in Ludlow vs. Ramsey (11 Wall., 581) by the same court.  So in Massey vs. Scott (49 Mo., 281,) this court says, that the Circuit Court obtained jurisdiction by the levy of the attachment.  It is also intimated, that a publication would be necessary to complete the jurisdiction, but even admitting this theory, it furnishes an authority in the present case ; and in Hardin vs. Lee, (51 Mo., 241) where the subject was again considered, it was declared, that in attachment suits the juris-

diction over the subject matter is obtained by the levy thereon of a writ properly issued, and no matter what, or how great, irregularities may subsequently occur, its judgment in regard thereto will be valid and binding until reversed by error or appeal, or set aside in a direct and appropriate proceeding for that purpose. (See also Freem. on Judg'ts, § 126.) The affidavit, though admittedly defective, was sufficient to support the writ. To say that it was not made under the attachment law, is a sheer assumption, and the action of the clerk and court conclusively shows its fallacy.

As to the judgment and execution, though admittedly informal and irregular, can they be treated as absolutely void in this action? In the case of Massey vs. Scott, above cited, it was held, that, where suit is begun by publication and attachment, the judgment will bind only the property attached; but that a general judgment in such case, although informal, is nevertheless valid till reversed, and will authorize the issue of a special execution against the attached property, and that a court would at any reasonable time correct such a judgment by an entry *nunc pro tunc.*

If the general execution had been issued and levied on property other than the attached property, the levy and sale under it would have been void. (Clark vs. Holliday, 9 Mo., 702.) The reason for this is plain enough, because in such a case the property would not have been subject to the jurisdiction of the court. That the judgment and execution in the present case could have been amended is not doubted, and proceedings which are amendable are not void. (Hardin vs. Lee, *ubi supra;* Cooper vs Reynolds, 10 Wall., 308; Durham vs. Heaton, 28 Ills., 264; Parmlee vs. Hitchcock, 12 Wend., 96; Stewart vs. Severence, 43 Mo., 331.)

In Hunt vs. Loucks (38 Cal., 372) the Court say: "Like an erroneous judgment, an erroneous execution is valid until set aside upon a direct proceeding brought for that purpose, and, until set aside, all acts which have been done under it are valid. In a collateral action it cannot be brought in question, even by a party to it, much less by a stranger to

it. Even directly it cannot be attacked by a stranger, for it does not lie in the mouth of A. to say, by it B. has been made to pay too much money, and therefore all proceedings under it are null and void." It is a matter that cannot be precisely determined, upon which of the two judgments found upon the record book in this case the execution was issued. The first was a special judgment regular in all its forms, and was the proper judgment authorized in the case. No explanation is given as to how the words "erroneous entry," written on the margin of the record, were placed there. For aught that appears, they may have been written there by some wholly unauthorized person.

There is nothing to show, that this judgment was ever ordered by the court to be set aside or to be for naught held. In such a case, where a doubt is raised between the validity of two acts, the presumption would be in favor of the legality of the proceedings of the court. But, if we concede that a general judgment was actually rendered, upon which a general execution was issued, it by no means follows, that they can be held void collaterally. Had property been sold, other than that on which the writ of attachment was levied, then there can be no question that the sale would have been an utter nullity. But the very property that was sold, and which is here in controversy, was the property that was attached, and thus brought within the jurisdiction of the court. Jurisdiction having attached, the court could legally order it to be sold or disposed of, and though the judgment and execution were unquestionably irregular and informal, they were still valid until set aside or reversed in a direct proceeding instituted for that purpose, and they could not be impeached or drawn in question in a collateral action.

I am of the opinion that the judgment below should be reversed, and the cause remanded.