LAMBOGLIA *v.* THE SCHOOL BOARD OF GUAYAMA.

APPEAL from the District Court of Guayama.

No. 380.—Decided May 27, 1909.

WRIT OF EXECUTION—ANNULMENT OF THE ORDER FOR THE ISSUANCE THEREOF—
DISSOLUTION OF ATTACHMENT.—A district court has complete jurisdiction to

issue the order of execution and 10 days afterwards to revoke it when con-
vinced that it had been improvidently issued, thereby conforming its pro-
ceedings to the requirements of law.

SCHOOL BOARDS—PROPERTY EXEMPT FROM ATTACHMENT.—Funds in the hands of
the treasurer of a school board, or in the bank on deposit to his credit, are
not subject to writs of garnishment, execution, or attachment.

The facts are stated in the opinion.

*Mr. Travieso* for appellant.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This action was brought, in the first place, for rents due on
a school house in Guayama, and the plaintiff, Lamboglia, re-
covered a judgment for $840, which he sought to collect by
execution. He made a motion that execution should issue
against the defendant which was granted by the district court
on January 19, last, and the execution according issued. This
execution was levied on money ($1,369.28) belonging to the
school board, and deposited in the American Colonial Bank
at San Juan. This proceeding was of course in the nature of
a garnishment, and the bank was notified to hold $1,050 of the
deposit belonging to the school board, subject to the order of
the marshal. On January 29 the *fiscal* of Guayama made a
motion in the district court to set aside and annul the order,
made 10 days previously, and to declare illegal the garnish-
ment levied by the marshal on the funds of the school board
on deposit in the bank. This motion was, on February 8 sus-
tained and the court accordingly annulled the order for the
issuance of the execution, and commanded the marshal to
vacate the levy of garnishment laid on the bank deposit, with-
out prejudice to the rights of the plaintiff to collect the judg-
ment rendered in his favor by use of the proper proceedings.

It is from this order that the present appeal is taken by
the plaintiff; and he seeks to sustain it on four grounds; to
wit:

"1st. Because the district court did not have power to reverse the
order made for the issuance of the execution, and to order the raising

of the attachment, since the order for the execution was a final one and was issued to comply with a final judgment.

"2d. Because the contract made between appellant and appellee is a valid one, and the appellee was legally bound for the payment of the rents due and unpaid.

"3d. Because the defendant having legal authority to execute the contract of lease and the duty to comply with its obligations, the School Board of Guayama was responsible for the incompliance with said contract; and its funds could be attached and applied to the payment ordered by the judgment, rendered in the suit, inasmuch as said funds were not free from attachment.

"4th. Because the order appealed from should be reversed in so far as the same declares null and of no effect the attachment made according to the law."

The first and fourth grounds of the appeal may be considered together as the last follows the former as a necessary consequence and they are both based on the lack of power or jurisdiction in the district court to revoke or annul the order for the issuance of the execution and to make the order, to the marshal, to raise the garnishment levied on the funds on deposit in the bank. These two orders are necessarily connected in their origin and effect and if the first was properly annulled the vacation of the last would necessarily follow. There is not doubt whatever that under our Code of Civil Procedure, and the interpretation given to similar statutes in the American courts, the district court has ample power, on motion of one of the interested parties, or of its own volition, to correct any errors into which it may have fallen, during the term, by revoking its orders and recalling its process, in furtherance of the ends of justice and the execution of the law.

The Supreme Court of Alabama in discussing this question announces the principle that the granting of a motion to quash an execution or a garnishment never involves an interference with the judgment on which the same is issued. The question to be decided on such a motion is merely whether or not under the judgment rendered, and the attendant facts, the writ issued therefor and its enforcement was warranted by law.

Such a motion may be acted on whenever the court is in session, without regard to the time at which the judgment itself was rendered.    (*Harrison* v. *Hammer,* 99 Ala., 603, 12 So. Rep., 917.)

The trial court was not executing a judgment of the Supreme Court in this case, but its own judgment with which the Supreme Court had declined to interfere, by dismissing an appeal taken therefrom.    The District Court of Guayama has complete jurisdiction to issue the order for execution and 10 days afterwards to revoke it when convinced that it had been improvidently issued; so as to conform its proceedings to the requirements of law.    It is a well established principle that courts of original jurisdiction have the power to annul an order of execution at any time.    (17 Enc. of Law and Pro., p. 1157, and cases cited.)

The second proposition advanced by counsel for appellant in his brief is entirely correct.    There is no doubt of the validity of the contract of rent on which the judgment against defendant is based, and the school board is bound to pay the rents which are still due and unpaid.    The only question here is as to the manner in which this collection shall be made.    See decision of this court in this case on former appeal, June 22, 1907.

The third proposition set forth in the brief of appellant involves a *non sequitur.*    It does not follow because the defendant had the legal power to make the contract of rent and because, like all other persons natural or artificial, it ought to comply with its contracts, that therefore its funds on deposit in bank could be garnisheed and applied to the payment of a judgment rendered against it in a suit for rent; and that said funds are not exempt from execution.    There are other means than the writs of execution, attachment and garnishment provided by the law for enforcement of the plaintiff's rights, and compelling payment on the part of this defendant of a debt due and established by a judgment of a court of competent jurisdiction.

We will proceed to point out what these means are, after discussing, more or less briefly, the principles of law governing the case presented to us for decision. In discussing this question we should bear in mind the difference between an attachment, an execution and a garnishment. They are severally thus substantially defined by Bouvier in his excellent dictionary.

"*Attachment.*—Taking into the custody of the law the property of one already before the court, or of one whom it is sought to bring before it. A writ for the accomplishment of this purpose. This is the more common sense of the word. It is in its nature, but not strictly, a proceeding in *rem*—that is to say, the process is to be served on the thing itself—and the mere possession of the thing, by the service of process and making proclamation, authorizes the court to decide upon it without notice to any individual whatever. Drake, Att., par. 4a; 39 Pa., 50; 55 Mo., 128."

"*Execution*, in civil actions, is the mode of obtaining the debt or damages or other thing recovered by the judgment; and it is sued out either by the plaintiff or defendant."

"*Garnishment.*—A warning to any one for his appearance in a cause in which he is not a party, for the information of the court and to explain a cause, and is now generally used of the process of attaching money or goods due a defendant in the hands of a third party. The person in whose hands such effects are attached is the garnishee, because he is garnished, or warned, not to deliver them to the defendant, but to answer the plaintiff's suit. The use of the form "garnishee" as a verb is a prevalent corruption in this country. It is an attachment against money or property in the hands of a third person, and so is a species of seizure by notice; 41 Kan., 297, 596." (1 Bouvier Law Dict., pp. 187, 715, 870.)

We must also keep in view the distinction between the rights of a *quasi* municipal corporation, such as a school board, when it is made a garnishee, and when it is the defendant in the case, against whom a judgment has been rendered or is sought, and whose funds are sought to be reached in the hands of a third person. The same legal principles are to some extent involved but they are sometimes differently applied in the two cases.

In seeking the solution of this problem we may properly recur to the California decisions, that great fountain from which we so often drink. The case of *Morgan* v. *The Board of Education* is referred to by both parties and it may be consulted with possible benefit. This was a case of breach of contract in which damages were sought and recovered therefor. It is claimed that it does not appear that there is any fund out of which the judgment, if recovered could be paid. The Supreme Court said that the question of payment was not yet before it; the only question then pending being the liability of the defendant, the Board of Education, for breach of the contract alleged to have been made with the plaintiff. The court in the decision used the following language:

"A public corporation or a *quasi* municipal corporation has the power to enter into contracts for the purposes and under the authorities conferred upon it by the statutes. It is not claimed that defendant did not have the power to enter into the contract with the plaintiff. Having the power to enter into the contract, it became a valid and binding contract when entered into, in the form and in the manner prescribed by the statute. It was binding upon the plaintiff, and he was in law compelled to perform it, although its performance should result in loss to him. If he had failed to perform it of his own volition he would have been liable to defendant for all damages caused by his breach thereof. It was also binding upon defendant, and it is liable for damages caused by the breach thereof. It refused to allow plaintiff to perform. Having the power under the statute to make the contract, it became liable for its breach. It would be strange, indeed, if an artificial person could make a valid contract, binding upon the contractor and upon which the contractor would be liable in damages for a breach, and yet escape liability on its part, by claiming that the public funds could not be used to pay damages. The defendant will not be allowed to escape responsibility upon any such pretext. It is well settled that in such case the corporation is liable in damages for the breach of the contract." (*Morgan* v. *Board of Education,* 136 Cal., 246.)

This is all that is said by the court at all applicable to the case at bar, and it goes to support the second proposition ad-

vanced by the appellant, concerning which there is no doubt whatever; but it does not support in the least the third proposition contended for which is the essential point in the case presented to us for decision. This subject is further presented, by the same learned court, in the case of *Emeric* v. *Gilman.* In this case the plaintiff having recorded a judgment against a county sought to have the same satisfied by an execution against the inhabitants thereof. The Supreme Court promptly ruled that no execution whatever can issue upon a judgment rendered against a county; but that in such case it was the duty of the supervisors to apply such funds, in the county treasury, as are not otherwise appropriated, to the payment of the judgment; or if there are no funds available to levy a tax to obtain them, if they possess, the taxing power; and if the supervisors fail or refuse to apply the funds or to levy the tax, resort may be had to a *mandamus* to compel them to do so. But if they neither have available funds nor the power to levy a tax then the only recourse the plaintiff has, to collect his judgment, is an application to the Legislature to confer authority on the supervisors, and afford the creditor relief. (See *Emeric* v. *Gilman*, 10 Cal., 404.)

Similar principles are enunciated and presented with great clearness in the luminous opinions promulgated by the same high court in the cases of *San Francisco Savings Union* v. *Reclamation District* and *Skelly* v. *School District,* to which we will turn for further counsel.

In discussing a claim against a reclamation district, which is a political entity legally similar to a school board, the Supreme Court of California speaking through Mr. Justice Shaw announces the following doctrine:

"A judgment against the defendant in an action upon these claims would be of no direct benefit to the plaintiff, and would set him no further on the road to recovery of his money than he was at the time the claims were originally allowed. The judgment could not be collected on execution. The district has, and under ordinary circumstances could have, no property subject to execution. (*Hensly* v.

*Reclamation District,* 121 Cal., 96.)  It has no right to acquire property except for the purpose of carrying on the work of reclamation and matters incidental thereto.  Property devoted to that sort of public use, and belonging to a public corporation or public agency, cannot be levied on and sold to satisfy judgments against such corporation or agency.  The only means by which the plaintiff could obtain payment of such a judgment would be by resort to the remedy which he had in the first instance—that is to say, a suit in *mandamus* to compel the levying of an assessment whereby money could be raised with which to pay the same.''  (*San Francisco Savings Union* v. *Reclamation District,* 144 Cal., 648 and 649.)

The same principle is declared in even stronger terms in the case of *Hensley* v. *Reclamation District,* found in 121 Cal., 96, and, at least in its milder expression, applies to the case at bar.  In the Skelly case the school district was made a garnishee.  The court held that the State is not bound by general words in a statute, which would trench upon its sovereign rights, and cannot be subjected to the garnishment process; and that a school district being merely an instrumentality of the State cannot be garnisheed in an attachment suit by a third party against its creditor.  The court further holds that the trustees of the school district might voluntarily pay the amount of a debt, due to its creditor, to the sheriff holding an execution, but in making such a payment the officers assumed the risk of showing that the debt was a valid one existing against the district.  (*Skelly* v. *School Dist.,* 103 Cal., 652.)  This case is not exactly parallel to the one at bar, since the School Board of Guayama is the defendant in execution instead of the garnishee; but the principle is the same and entirely applicable.  Reference is made in the opinion of the California court to the cases of *Divine* v. *Harrie,* 18 Am. Dec., 194, and to *Mensin* v. *Chicago,* 92 Am. Dec., 204, which support the proposition maintained.

The American legal text books also set forth the jurisprudence on this subject in unmistakable terms.  The question presented in this case is more nearly allied to the question whether or not an execution can be issued against and levied

on the property of a municipal corporation than to the similar one of whether or not such bodies can be made. garnishees to secure a debt due to a creditor of the corporation. Mr. Beach says: "As a general rule execution cannot be awarded to enforce a judgment against a municipal corporation, unless the statute otherwise provides." (See 2 Beach on Pub. Corp., sec. 1653, citing the case of *Chicago* v. *Halsey*, 25 Ill., 495.)

Judge Dillon, in his standard work on municipal corporations, discussing the question of the exemption of municipal revenues from judicial seizure for debts, substantially says:

"Municipal corporations are instituted by the supreme authority of the state for the public good and they exercise, by delegation from the Legislature, a portion of the sovereign power. They are created to act as municipal agencies for the State and entrusted with the police and local government of certain designated civil divisions of its territory. Hence they are invested with governmental powers and charged with various duties, civil, political and municipal. In order that they may beneficially discharge the duties incumbent upon them. they are authorized to raise revenues by taxation and otherwise. These revenues of a public corporation constitute the essential means by which they are enabled to perform their duties under the powers conferred upon them. Should they be deprived of such revenues their powers would be practically destroyed and the ends of their creation entirely thwarted. Based upon considerations of this kind it has become the settled doctrine of the law that not only the public property of such corporations, but also the taxes and public revenues which they are authorized to raise, cannot be seized under execution issued against them, no matter whether said funds may be in the public treasury or in the channels of transit thereto. This doctrine of the inviolability of the public revenues by the creditor of a corporation is firmly maintained, although the corporation may be in debt at the time and has no means of payment except the taxes which it is authorized to collect and the funds which have been deposited in its treasury." (1 Dillon on Municipol Corporations, sec. 100 and note on p. 160.)

But we need not rely entirely on the Supreme Court of California or the textbooks for the enunciation of the princi-

ples governing the question of attachments, garnishments, and executions against the funds and the property of *quasi* public corporations.

The Supreme Court of the United States has followed along the same line in holding that money in the hands of a purser for seamen's wages has been held not liable to garnishment at the suit of creditors of the seamen. (*Buchanan* v. *Alexander* (4 How. 45 U. S., 20.)

The Supreme Court of Illinois in several well-considered decisions has elucidated the subject. We will notice only one. In the state of Illinois it has been more than once decided that an execution cannot be legally issued against a municipal corporation on a judgment recovered against it. Mr. Justice Breese in delivering the opinion of the Supreme Court, in a leading case, says:

"It is true, by the charter of the city it can sue and be sued, but it is not an inference, that if sued and a judgment passes against it, an ordinary writ of *scire facias* can issue, under which its corporate property can be seized and sold. Nor is there any necessity for such writ. On a debt being ascertained by judgment against the city, and a refusal to pay it, a *mandamus* can issue to compel payment or to compel a levy of taxes sufficient to discharge the judgment. This is the only legal way in which payment can or ought to be enforced." (*Chicago* v. *Hasley,* 25 Ill., 485.)

The same principle applies to a school board as the decisions heretofore cited and many others plainly show. In other States the same doctrine has been announced and followed.

In Georgia it has been held that a school board could not be charged as garnishee on account of salary due a teacher, nor on account of money due by them to a carpenter on a contract for building a school house. (*Hightower* v. *Slaton,* 54 Ga., 108; *Born* v. *Williams,* 81 Ga., 796.)

A public officer cannot be garnisheed for money in his hands to satisfy the demand which one has upon him merely as

a public officer. It is held in Massachusetts that the treasurer of a county cannot be held as a garnishee to pay over money in his hands due to a defendant for services as a juror. (*Chealy* v. *Brewer,* 7 Mass., 259.)

In Porto Rico, too, this question has received some attention. Judge Holt in the case of *Horton* v. *Aguadilla* has taken up, discussed and decided almost the very question now before us for consideration. The learned judge of that court holds that a ministerial officer in official possesion of public money is not subject to garnishment; and that the Insular Government, although under the Organic Act it may be sued, cannot be charged as garnishee touching a fund due through its treasurer to a municipality; and that money devoted to the purpose of carrying on a municipal government cannot be seized under a writ of garnishment; since it may at any time be necessary to the very existence of the government; but the municipality can be compelled by *mandamus* to pay its debts. (*Horton* v. *Aguadilla,* 1 P. R. Fed. Rep., 457.)

Our own statutes, of course, govern if they are clear and applicable. As the law of the land they merit our profound study and unquestioned obedience. Let us see what our statutes say in regard to the subject. We find in the Code of Civil Procedure, in paragraph 12 of section 249, that certain property belonging to municipal governments such as court houses, jails and public offices, and also property belonging to school districts in the Island for the use of schools, and certain other property enumerated, are exempt from execution. We also find that under sections seven and eight of An Act to Establish a System of Public Schools in Porto Rico (see Laws of 1903, p. 63), school boards have charge of all school buildings in their respective districts, and have power to do various things, among others to rent buildings for school purposes; and that certain funds are set aside for them to use in the performance of their duties; and the money thus set aside is required to be kept as a separate fund and that said separate fund shall be disbursed by the treasurer

of the school district only upon written authorization of the officers of the respective school boards in said municipality. (See section 19 of School Law; Sess. Acts 1903, pp. 65 and 66.) By section 12 of the Act of March 12, 1903, being the codified school law of Porto Rico, a school board in a municipality is made a corporation capable of suing and being sued in the name of the board, thus putting it on a level with municipal corporations as far as the issuance and levying of writs of execution, attachment and garnishment are concerned. By section 14 of the School Law (see Laws of 1903, p. 64), just such suits as the one brought by the appellant herein are authorized against the school board; but it is distinctly provided that if the judgment be rendered in favor of the landlord such a judgment must be recognized by the school board as a valid claim, and of course paid in due course, out of any funds on hand, but nothing is said of any legal process to compel payment. We also find in section 107 of An Act to Establish a System of Local Government in Porto Rico (see Session Acts 1906, p. 141), that funds in the hands of the Treasurer of Porto Rico belonging to a municipality are not subject to garnishment by a creditor of the municipality. There is no difference in principle between cases in which the funds are in the hands of the Treasurer of Porto Rico and in the hands of the treasurer of a school board, because they are as much public funds in the custody of one officer as in that of the other. By section eight of the Amendatory Act, passed on March 14, 1907 (see Session Acts 1907, p. 95), a school board is authorized to hold title to property in its corporate name, and all property so held by the school directors for several purposes is exempt from taxation. Taking all these acts together it is plainly the intention of the Legislature to put the funds of school boards beyond the effect of writs of garnishment and thus secure them from being diverted from the purposes for which they were originally intended. Of course, as has been said heretofore, it is not the intention of the Legislature, nor the effect of the law, to deprive any person of the

payment of a just debt; but other means are open to the creditors to collect their debts from school boards than the harsh ones sometimes used by means of attachments or garnishments. For these reasons we do not regard funds in the hands of the treasurer of a school board, or in bank on deposit to his credit, as subject to writs of garnishment, execution or attachment.

We are confirmed in those views by the construction put on the statutes of California. The California cases interpret similar statutes existing in that State passed in the year 1854 and later. In the case of *Hensaker* v. *Boarden* in 5 Cal., 288, the Supreme Court of California holds that a county government is an agency, or a portion, of the State government and that a county debt, created by authority of law is virtually a part of the state debt and the remedy against the county in collecting the same is similar to such a remedy against the State. In like manner in the case of *Gilman* v. *Contra Costa County* in 8th Cal., p. 52, the same court holds clearly that the levy of an execution upon the revenues of the county in the hands of the treasurer is illegal and void. So in the case of Sharp against the same county it is held by the same court that a county government, being a part of the State government, is not amenable to judicial process, except by its own consent, and that creditors must rely solely upon its good faith as to the time, mode and manner of payment. (See *Sharp* v. *Contra Costa,* 34 Cal., 284.) This is going somewhat further than we might care to follow, but these authorities at least sustain the proposition that a school board, being an agency of the government, is not subject to having its revenues attached or garnisheed in the hands of its treasurer, or on deposit to his credit in bank, to satisy a debt due any one, even when the amount of the same has been established by a judgment of a competent court, and the obligation is not denied.

But this question is virtually set at rest by the decision of this court in the case of *Roig* v. *Ponce,* in which the opinion

written by Mr. Justice Hernández, rendered on the first day of February last, discusses the legal principles involved and clearly holds that the funds of a municipality, deposited in bank, are not subject to attachment or garnishment to secure a claim of creditor, although the same is admitted to be just, due and unpaid. The school board, which is the defendant to the case at bar, stands on an equal footing with the city of Ponce; and the same legal principles apply to it as to the municipality. It was unnecessary to go further than this case for authority, but the decisions from the American courts may well be referred to, in order to show that the doctrine established by this court is in accord with that recognized by the courts of last resort on the Continent.

Then, without losing sight of the distinction between the cases in which a school board may be the garnishee and those in which it may be the defendant in execution or attachment, and remembering that some of the cases discussed herein as authorities belong to one class and some to the other, we believe that the great current of judicial authority in the American jurisprudence runs in accorance with the general principles announced and decided by this court, in the case of *Roig* v. *Ponce,* and sustains us in the affirmance of the order made by the court below.

For the reasons clearly deducible from the foregoing authorities we are of the opinion that the order of the District Court of Guayama, from which this appeal was taken, should be in all things affirmed, with the costs of this court and the court below against the appellant.

*Affirmed.*

Mr. Chief Justice Hernández concurred.

Mr. Justice Wolf dissented.

Justices Figueras and del Toro took no part in the decision of this case.