EDMUND R. NELSON ET AL.
vs.                    } MARCH TERM, 1850.
NAAMAN TURNER.

[JURISDICTION—EQUITY.]

THE Court of Chancery has no jurisdiction to decide that a return to a writ of *fieri facias* or *venditioni exponas* is defective—the court out of which the writ issued, alone having cognizance of the question of the sufficiency of the return.

If a defendant in a judgment at law objects to the return by the sheriff, he may appear in the county court, at the term to which the writs were returnable, and move to quash them, or retain possession of the land sold, and effectually defend himself in an action of ejectment, brought by the purchaser, or upon proceedings under the act of 1825, ch. 103, if the description of the land in the return was so far defective as to render it void for uncertainty.

The father of the plaintiffs in this case, having failed to adopt either of these modes of resistance, and having, by various acts and declarations, free from all equivocation or doubt, acknowledged the perfect validity of the purchaser's title—under these circumstances, there can be no principle of equity which would justify the active interposition of this court in his favor, or in favor of those who claim under him.

[The facts of this case are fully set forth in the Chancellor's opinion.]

THE CHANCELLOR:

This bill was filed on the equity side of Somerset County Court, and prays that a decree or order of that court, passed on the 17th August, 1847, under the authority of which, the land in the proceedings mentioned, was conveyed to the defendant, may, together with the conveyance, be vacated; and that said land may be decreed to be conveyed to the complainants, as the heirs at law of Tubman Nelson, deceased; and for an account of the rents and profits, &c.

It appears by the pleadings and evidence, that in the year 1823, a decree was passed by said court, for the sale of the real estate of William Stanford, deceased, and that, on the 21st of January of the following year, the trustee named in the decree made sale of the land in question, to the said Tubman Nelson, consisting of a part of a tract of land called "Newbenny;" which

8

sale was duly reported to, and finally ratified and confirmed by, the court, at September term, in the year 1824.

That two of the instalments of the purchase money were paid, but the third not being paid, suit was instituted by the trustee against the purchaser, and judgment recovered against him, on the 22d of November, 1826, for that instalment ; upon which a fieri facias was issued on the 2d of July, 1827. This writ was returnable to November term of that year, and was then returned by the sheriff, as follows : "I hereby certify to the County Court, that by virtue of the within writ to me directed, I did, on the 20th of September, 1827, cause the said writ to be laid on a part of a tract of land, called 'Newbenny,' being the lands he bought of Stanford's heirs, &c., which lands and tenements remain in my hands, for want of buyers."

That thereupon a venditioni exponas was issued out on the 10th of December, 1827, returnable to the then ensuing May term of the County Court, when the sheriff made return thereof as follows : "The said tract of land, called 'Newbenny,' containing two hundred and thirty-six acres, more or less, being the same lands the said Tubman Nelson purchased of a certain Elijah Christopher, trustee for the sale of the real estate of William Stanford, as by reference to the report of the said trustee as aforesaid, will more fully and at large appear," &c., "the said lands and tenements were struck off to John Turner, for the sum of $3 76 per acre, amounting, in the whole, to the sum of $887 36, current money, he being the highest bidder for the said tract of land ; so that I have thereat levied the sum of $893 37, and the same hath satisfied and paid unto the said Elijah Christopher, in satisfaction of the debt," &c. The difference between the amount of the purchase money of the land, and the amount made by the sheriff, was caused by a few articles of personal property, also taken in execution.

That, subsequently, on the 24th of June, 1828, the sheriff, by his deed of that date, conveyed the said land to the said purchaser.

The proceedings further show, that the trustee, by whom the sale was made to Tubman Nelson, having died without exe-

cuting a conveyance, a petition was filed in this cause, in which he was appointed, by the present defendant, as the devisee of John Turner, the purchaser at the sheriff's sale, praying the court to appoint a trustee to make a conveyance to the said defendant; upon which petition, the court, on the 17th of August, 1847, appointed a trustee, with directions to execute a conveyance accordingly, which was done on the 5th of the then ensuing month of October, as by the record appears.

The bill in this case alleges, and it is not denied, that the order of the court, of the 17th of August, 1847, was altogether ex parte; but all the allegations in the bill, of fraud and unfairness, are denied; and there is a total absence of proof, calculated to cast a shadow of suspicion upon the perfect integrity of the transaction; on the contrary, the evidence shows clearly, that Tubman Nelson, in his time, recognised the title of John Turner, by becoming his tenant of this very parcel of land, and by voluntarily removing from it, when he found it no longer for his interest to occupy it as a tenant to Turner, and by frequent declarations of the kindness with which he, Nelson, had been treated by Turner, whilst he did occupy the land as his tenant.

Tubman Nelson died in the year 1834, leaving the complainants, then survivors, his heirs at law, and this bill was filed by them on the 22d of April, 1848, the object being, as before stated, to vacate the order of the County Court, of the 17th of August, 1847, the deed executed in pursuance of that order, and for a conveyance to the complainants of the land in controversy. The bill takes no notice whatever of the proceedings at law against Nelson, the purchaser at the sale made by the trustee in 1824, nor of the judgment, and execution and sale made by the sheriff to Turner, in 1828; on the contrary, the bill alleges, that he, Nelson, paid the entire purchase money, and that the proceedings on the equity side of the County Court, in which Turner alleged that he had acquired title by virtue of a sheriff's sale, were founded upon false allegations. The record herein is conclusive against the truth of the bill, it appearing, upon the face of the record, that Nelson did not pay the entire purchase money, and that the judgment recovered

against him in 1826, in favor of the trustee who made the sale, was for an instalment thereof.

But though the bill does not notice or impeach the legal proceedings, under which the equitable title of Nelson was passed to the father of the defendant, the argument of the complainant's solicitor has been directed exclusively against those proceedings; and maintains that no title passed under the sale made by the sheriff, because, as it is said, the description given of the land, in the return to the fieri facias, is vague, uncertain and insufficient; and he refers to the numerous cases decided in the Court of Appeals, in support of his proposition.

I do not deem it necessary to examine those cases; nor to inquire whether, giving the purchaser the benefit of the return to the venditioni exponas, the imputed imperfections of the return to the fieri facias will be cured, according to the decision in the case, *Clark* vs. *Belmear*, 1 *G. & J.*, 443; or whether this case falls within the principle settled in the case of *Waters* vs. *Duvall*, 11 *G. & J.*, 37, which decided, that a levy upon a part of a tract of land, without describing what part, will not be cured by a return to a venditioni exponas, stating the sale of the *entire* tract, the return not showing what part of the entire tract sold, had been seized under the fieri facias, and consequently, that the whole sale was void for uncertainty.

I say, I do not deem it necessary to examine the cases, or pronounce an opinion upon this question, which may not, perhaps, be entirely free from difficulty; because, as I conceive, even if this court has jurisdiction on the subject, and the bill had assailed the sale and return of the sheriff, (which it does not,) the complainants are without equity, to claim the interposition of the court in their favor.

The sheriff's sale was made in the year 1828, and the purchase money paid by Turner at that time. The return of venditioni exponas was to May term in the year 1828; and although Tubman Nelson, the defendant in this judgment, lived until the year 1834, no attempt was made by him to impeach, or in any way question, the validity of the title which passed by that sale to the purchaser, Turner. If the returns to these writs are de-

fective, the defendant, Nelson, might have appeared in the County Court, at the terms to which they were returnable, and moved to quash them; and if his motion had been successful, the money would have been returned to the purchaser, it being then under the control of the court. Indeed, the County Court alone could take cognizance of this question; a court of chancery having no jurisdiction or power over it. *Waters* vs. *Duvall*, 6 *G. & J.*, 76.

If, to be sure, the defendant in this judgment omitted to appear at the return of the writ, and move to quash it, he might still keep possession of the property, and in an action of ejectment against him by the purchaser, or upon proceedings under the act of 1825, ch. 103, he might defend himself at law, and defend himself effectually, if the description of the land in the returns by the sheriff, was so far defective as to render it void for uncertainty.

But in this case, the defendant, Tubman Nelson, did not adopt either of these modes of resistance. He neither appeared in the County Court, upon the return of the writs, nor did he keep possession, and resist the purchaser's right thereto, under his purchase. Instead of doing this, he suffered the purchaser's money to be applied to the payment of his debt, and acknowledged by acts and declarations, free from all equivocation or doubt, the perfect validity of his title. It seems to me, that under these circumstances, there can be no principle of equity which will justify the active interposition of the court in his favor, or in favor of those who claim under him. It must be recollected, that it is not the purchaser who is asking the aid of the court, to give him the benefit of his purchase, of which he is and has been, since the year 1828, in the enjoyment, with the consent and approbation of the defendant in the judgment, until his death, which did not take place until six years subsequently. The heirs at law of this defendant come, fourteen years after his death, and apply to a court of equity to restore to them property, bought, and paid for, under executions against their ancestor, and when if their application is successful, the money which has been applied to the payment of the debt of

8*

that ancestor, can never be returned.    The case, presented in this aspect, appears to me to be utterly destitute of equity; and if there were no other objections to the relief prayed by the bill, and the jurisdiction of this court was undoubted, I should refuse to grant it; and being of this opinion, without consider-ing the other questions raised in the argument of the defendant's solicitors, I shall pass a decree dismissing the bill.

I. D. JONES for Complainants.
WOOLFORD and CRISFIELD for Defendant.