CASE 26—PETITION ORDINARY—FEBRUARY 27.

## Bell, Berkley & Co., &c., vs. Hall's ex'rs, &c.

### APPEAL FROM SCOTT CIRCUIT COURT.

1. An affidavit for an attachment, under the act of 23d December, 1861 (*Myers' Sup.*, 38), must allege, in substance, that the debtor has left the county of his residence, that he has been absent therefrom 30 days, and that during that period he

Bell, Berkley & Co., &c., vs. Hall's ex'rs, &c.

has been and continued voluntarily within the so-called Confederate States, or their military lines.

2. A bill was drawn and indorsed in Lexington, Ky., 1861, payable in New Orleans, La., on the 13th January, 1862, and not presented for payment, or protested, until one year after its maturity. *Held*—That the existing hostilities and uncertainty of mail communications was a reasonable and legal excuse for failing to present the bill for payment, and the indorser was not thereby released.

3. Several creditors sued out and levied their attachments on the property of their debtor; those first sued out and levied were adjudged to be defective, and the plaintiffs amended their affidavits under act 15th March, 1862 (*Myers' Sup.*, 41), and claimed a lien from the suing out of their original attachments. *Held*—That they had a lien as between themselves and their debtor, but, as between them and subsequent attaching creditors, they only had a lien from the filing of the amendment. *Allen vs. Brown* (4 *Met.*) does not militate against the views expressed in this case.

HUNT & BECK, for appellants, cited *Civ. Code*, sec. 222; 17 *B. Mon.*, 542; 1 *Met.*, 470; 3 *Met.*, 281; 4 *Met.*, 343; *Drake on Atta.*, chap. 5, secs. 83 to 95.

M. C. JOHNSON and A. DUVALL, for appellees, cited 4 *Met.*, 342; *Civ. Code*, secs. 291, 289, 257, 287, 874, 161; 13 *Barb.*, 412; 7 *Barb.*, 656; 13 *Howard's Pr. Rep.*, 348; *Session Acts*, 1861–2, p. 92.

JUDGE PETERS DELIVERED THE OPINION OF THE COURT:

A number of the creditors of Richard M. Johnson, among whom were appellants and appellees, severally sued out, from the Scott circuit court, attachments against his estate, mainly upon the grounds provided for and authorized by *an act*, entitled "*An act to amend the Code of Practice in civil cases*," approved 23d December, 1861 (*Sess. Acts*, 1861–62–63, 54).

The actions were all, by an order of court, consolidated, the attachments sustained, and, subsequently, interlocutory orders were made for the sale of the whole of the estate attached; the master executed said orders as therein directed, and reported the sales to court. The proceeds of the sales were insufficient to pay the whole of the debts, and the master was directed to ascertain and report the amounts of the debts of the several creditors, and the order of precedence acquired by their attachments. He reported that appellees were entitled to priority over appellants. To this report Bell,

VOL. II—19

Berkley & Co. and Mrs. Ford excepted. Their exceptions were overruled by the court, the order of precedence reported by the master adopted, and a judgment rendered for a distribution of the funds accordingly.

Two of the actions, in which said judgment was rendered, were prosecuted by Hall's executor in the court below, and two by James F. Robinson. In two of them, perhaps, separate affidavits were not filed, and, as the grounds for the attachments are not stated in the same language, nor substantially the same in the petitions and affidavits, where there are affidavits, and, as the differences are material, it is necessary to consider the cases separately.

The first case presented by the record is Hall's executor against R. M. Johnson, &c., brought on the 24th of December, 1861, in the court below, on a note for $12,000, due October the 1st, 1861; and in the petition, before it was amended, the plaintiff alleges, after setting forth the indebtedness of the defendants therein, and how the same is evidenced, that "said debt *is justly due and unpaid*," and that the defendants, L. L. Johnson and R. M. Johnson, have now, each, estate and property in Kentucky; that they are each in the Confederate States, and have so been within the bounds of said Confederate States, for more than sixty days before the bringing of this suit; that they each, with their families, left Kentucky to go to and in said so-called Confederate States, did go within their territory, and have so remained ever since, for a period of more than sixty days next before this time; that he will recover judgment for the full amount of his debt against him, $12,000 with interest, &c.

The facts stated in this petition are not sufficient to authorize the issuing of the attachment, unless they constitute the grounds, or some one of them, added to those pre-existing by the *act approved 23d of December*, 1861, *supra*.

*Sections* 1, 2, *and* 3, of that *act*, are all that need be particularly noticed in connection with the subject under consideration, and are in the following language:

1. That the defendant, or defendants, or some of them, are in the service of the army of the so-called Confederate States

of America, or any military body of men co-operating with said army.

2. That he, or they, have *voluntarily left the county of his*, or their, residence, have been absent therefrom for thirty days, and, during said period of time, have been and continued *voluntarily* within the so-called Confederate States, or their military lines.

3. That he, or they, have *voluntarily left the county of his*, or *their, residence*, for the purpose of joining the army of said Confederate States, or any military body of men co-operating with said army, or for the purpose of entering the service, either civil or military, of said Confederate States, and leaving for such purposes, or either of them, have remained absent from such county so that the ordinary process of law could not be served upon them for thirty days, and continued so absent.

It is evident that the petition was drawn with the intention of bringing the case within the provisions of the second *section;* and whether it comes up to the requirements of that *section*, is now the important question to be determined.

The essential primary fact to be alleged is, that the debtor has voluntarily *left the county of his residence*, thereby limiting the remedy, by implication at least, to residents of the State; next, that he has been absent therefrom 30 days; and lastly, that during said period he has been, and continued *voluntarily*, within the so-called Confederate States, or their military lines.

The fact of his having *voluntarily left the county of his residence* is nowhere alleged in the petition in express terms; nor does the language, by any allowable or reasonable interpretation, convey that meaning; for although it may be inferred, that, as it is alleged, that he left the State with his family, that he left it voluntarily, still, it by no means follows that he resided in the State. By the omission to allege that important fact in the original petition, the attachment, when it was sued out, was unauthorized. Of the effect of the amendments we will speak hereafter.

In the second case of John Hall's executor against R. M. Johnson, on a note for $5,000, the petition was filed the 6th of November, 1861, and on the 24th of December, 1861, the plaintiff filed his affidavit with the clerk, and sued out an attachment against the estate of R. M. Johnson. That affidavit will not be recited, but the essential facts omitted in the petition in the former case, are likewise omitted in this affidavit; and the attachment in this case, when first sued out, was unauthorized. It may be necessary to refer to the amended affidavits hereafter.

The first case of James F. Robinson against R. M. Johnson, &c., was brought on the 24th of December, 1861, on a bill of exchange for $5,208 33, drawn and accepted by James J. Wyley, payable to the order of Jilson P. Johnson, at the counting-house of Robson & Allen, New Orleans, and indorsed by the payee and R. M. Johnson. The bill was not due till the 13th of January, 1862, and not presented for payment and protested until one year after it matured; and it is insisted by counsel for appellant that R. M. Johnson, in consequence thereof, is not responsible as indorser.

The war which then existed, and the condition of the country, and the difficulties and uncertainty of mail communications between Kentucky and the place at which said bill was payable when it matured, furnish a reasonable and legal excuse for failing to present the bill for payment, and the indorser was not thereby discharged from liability as such, as has been held by this court in 2 *Duvall*. But as the original petition failed to state the necessary facts as in the preceding cases to constitute grounds for an attachment, the original attachment was unauthorized against the estate of R. M. Johnson.

The last suit of James F. Robinson against R. M. Johnson and others, was brought the 24th of December, 1861, on a note for $3,564 30, dated 18th of July, 1861, and due twelve months after date. No separate affidavit was filed. Robinson, in his petition, alleges, that when said note was executed, he and the said R. M. Johnson resided in the county of Scott, and he, said Johnson, then, and at the time plaintiff filed his

petition, owned estate in Kentucky; but since that time Johnson, with his family, had left Kentucky, and had gone to and is in the so-called Confederate States, and had been in said Confederate States for more than sixty days next before bringing said suit, and claims to be a citizen thereof. He furthermore alleges that his said debt is *justly* due and owing, unpaid, and payable as aforesaid, and for which he will, when due, recover judgment.

This petition contains the essential allegations that R. M. Johnson resided in Scott county, Kentucky, and that he left his place of residence *with his family* and went to the Confederate States; had been there for sixty days when the suit was brought, and claimed to reside there, which, we think, is a substantial compliance with the requirements of the statute *supra.* For if he left with his family, an inference that he did not leave voluntarily would be irrational, and if he claimed his residence within the Confederate States, the conclusion must be that he voluntarily remained there, because it was the home of his choice.

In this last case, therefore, we conclude that sufficient grounds for the attachment were stated, and the same was properly issued.

In a few days after appellees' attachments had been sued out and levied, appellants Bell, Berkley & Co. and Mrs. M. B. Ford caused attachments to be issued and levied on said R. M. Johnson's property, on the grounds enumerated in the act of the 23*d of December*, 1861, *supra*, stating the grounds substantially if not in the very language of the statute.

At the May term, 1862, of the Scott circuit court, appellees amended their petitions and affidavits, and, waiving for the present the sufficiency of these amendments, or some of them, what effect they are to have on the rights of appellants, and whether they can be prejudiced by said amendments, must now be determined.

Appellees claim that by an *act approved the 15th March*, 1862, entitled "*An act to amend an act to amend the Code of Practice in civil cases*," approved *December* 23*d*, 1861, their said amendments were allowed, and that they acquired liens by suing out

and levying their original attachments on said R. M. Johnson's estate, which should prevail over those of appellants.

The *first section* of the last named act reads as follows: "That in any proceeding by attachment now pending, or hereafter to be commenced, the affidavit or grounds of attachment may be amended so as to embrace any grounds of attachment that may exist up to and until the final judgment upon the same. If the amendments embrace only grounds existing at the time of the commencement of said proceeding, the lien created by the suing out or levying the original attachment shall be held good," &c. The grounds stated in the amendments existed at the time the original attachments were sued out.

As between the original debtor and the attaching creditor, the lien created by the original attachment would be available by virtue of this *act*. But whether it will or can operate so as to postpone the liens of other creditors of the same debtors, created by intermediate attachments issued upon proper and sufficient grounds, is a very different question. The enactment does not in express terms so provide, nor does the language necessarily import such to be its meaning and effect.

The power of the Legislature to pass an act to postpone the liens of appellants created by their attachments levied on the debtor's property before appellees' amendments were filed, and thereby deprive them of all benefits arising therefrom, is, to say the least of it, very questionable; and this court cannot give such a construction to the statute, when, by a different construction, effect can be given to it, and the power of the Legislature to pass it stand unquestioned. We, therefore, conclude that it was the legislative intention, by this enactment, that the lien created by the suing out and levying of the original attachments of the appellees should be held good as between them and their debtor, R. M. Johnson, but ineffectual to defeat the liens of appellants acquired before said amendments were filed.

Nor does *Allen against Brown* (4 *Met.*, 342), militate against the views herein expressed; that was a controversy between

the attaching creditor and debtor, and the question in this case did not arise there.

No pleadings were filed by the purchaser of the land showing a defect of title to any part thereof, and the voluntary statement of the master of the existence of such defect by way of supplemental report, unauthorized by any order of court without pleadings or proof, could not authorize the circuit judge to abate the price.

Hawkins' proceedings were as defective as the original proceedings of appellees, and he had not acquired such a lien on the property as could give him priority over theirs. The judgment as to him and as to Kenny, the purchaser of the land, is *affirmed*.

But the judgment as to appellants, Bell, Berkley & Co. and Mary B. Ford, is *reversed*, and the cause remanded with directions that the debt of appellee, Robinson, of $3,564 36, be paid out of the proceeds of the sales of R. M. Johnson's estate; and next, that the debts of appellants, Bell, Berkley & Co. and Mary B. Ford, be paid, and the residue of the funds be distributed *pro rata* on the two debts of Hall's executor, and the debt of James F. Robinson on the bill of exchange.

Appellees will recover their costs of Hawkins, and appellants, Bell, Berkley & Company and Mary B. Ford, will recover their costs of appellees.