Mentzer et al. v. Ellison et al.

1. Attachment—Jurisdiction.

In attachment cases the court acquires jurisdiction of the person of the defendant by virtue of service of its process upon him or of his appearance, and of the property by virtue of the attachment.

2. Same—Affidavit.

Jurisdiction in attachment proceedings depends upon the affidavit, and, if none is filed, the writ and all proceedings under it are void.

3. Same.

It is indispensable that the affidavit for attachment contain an allegation of indebtedness from the defendant, and also of one of the grounds upon which the statute authorizes an attachment. If either allegation is absent from the affidavit, there is no power to issue the writ.

4. Amendments.

Amendments under section 117 of the code must be confined to cases in which the insufficiency is not jurisdictional.

5. Same.

M. commenced an action, and, to obtain an attachment, filed an affidavit which was defective in that it did not attempt to state any statutory ground therefor, and the writ was issued and levied. Afterwards, E. and others commenced an action against the same defendant, and caused a writ of attachment to be regularly issued and levied upon the same property. *Held*, that as between M. and E. the latter was entitled to have the property subjected to the payment of his demand unincumbered by the claim of M.

*Appeal from the District Court of Arapahoe County.*

Messrs. Norlin & McDuffie, for appellants.

Mr. CHARLES M. CAMPBELL, for appellees.

THOMSON, J., delivered the opinion of the court.

On the 3d day of January, 1893, O. F. Mentzer brought suit in the district court of Arapahoe county, against L. Filberg, to recover an alleged indebtedness of $609, and caused a writ of attachment to be issued and levied upon the property and effects of the attachment defendant. On the same day the appellees, Ellison & Sons, commenced their action against L. Filberg, and sued out and levied an attachment upon the same property. The levy of the appellees was subsequent to that of Mentzer. The affidavit upon which the writ in Mentzer's case issued was as follows:

"STATE OF COLORADO,   ⎰    *In the District Court of*
"COUNTY OF ARAPAHOE, ⎱ *ss.*    *Arapahoe County.*

"O. F. MENTZER,
      "Plaintiff.
        "*vs.*        AFFIDAVIT IN ATTACHMENT.
"L. FILBERG,
      "Defendant.

"O. F. Mentzer of said county, being duly sworn, doth depose and say that L. Filberg against whom the said O. F. Mentzer is about to sue out an attachment, is indebted to him in the sum of six hundred and nine dollars, and that the said demand is due and wholly unpaid.

               "O. F. MENTZER.

"Sworn and subscribed to before me this third day of January, A. D. 1893.

               "MATT ADAMS, Clerk.
                 "By G. S. RICHARDS, Deputy."

On the 5th day of January, L. Filberg filed a verified answer to the complaint of Mentzer, admitting the indebtedness to him as stated, and authorizing judgment to be entered

against her for the amount with interest. The court, on the following day, on motion of Mentzer, sustained the attachment, and entered judgment according to the defendants' answer. Special execution was thereupon issued to the sheriff of Arapahoe county, by virtue of which he advertised the property taken to be sold on the 31st day of January, 1893. This proceeding was instituted by the appellees, as plaintiffs, to set aside the judgment sustaining Mentzer's attachment, in so far as its effect was to give priority to that attachment over the attachment of the plaintiffs, and to enjoin the sale by the sheriff.

The complaint sets forth the affidavit upon which the attachment was issued, averring that by reason of its insufficiency the attachment was void, alleging also that the pretended indebtedness was fictitious, that the note purporting to evidence it was not signed by L. Filberg, and that the suit was commenced, the attachment issued, and the judgment entered in pursuance of a fraudulent conspiracy among these defendants. From the admitted facts it appears that the defendant, Adolph F. Filberg, who signed the name of L. Filberg to the note, had ample authority to do so; there was no proof or admission of fraud; and the court very properly found these issues against the plaintiffs. But the court further found that the affidavit was insufficient to authorize the issuance of the writ, and adjudged the attachment void as against the plaintiffs, awarding precedence to the plaintiffs' attachment. From this judgment the defendants appealed.

The sole question for determination is whether, as between these plaintiffs and these defendants, there was such an attachment of the property of L. Filberg at the suit of Mentzer as to give him the right to prior satisfaction of his claim out of the attached property. The attachment defendant, by waiving all objection to the proceeding and consenting to judgment, could not afterwards, herself, attack the affidavit for insufficiency, and as against her the attachment would hold the property; but did her waiver of her own

rights render the proceeding valid as against other attaching creditors?

The following are sections 92 and 117 of the code:

"SEC. 92. No writ of attachment shall issue unless the plaintiff, his agent or attorney, or some credible person for him, shall file in the office of the clerk of the court in which the action is brought, an affidavit setting forth that the defendant is indebted to such plaintiff, stating the nature and amount of such indebtedness as near as may be, and alleging any one or more of the following causes for attachment, viz.:" Here follow the grounds of attachment.

"SEC. 117. No writ of attachment shall be quashed nor any garnishee discharged, nor any undertaking given by any person or persons under proceedings by attachment be rendered invalid, nor any rule entered against a sheriff, discharged on account of any informality or insufficiency of the original affidavit, or of the original undertaking given for the attachment, if the plaintiff or the plaintiffs, or some credible person, or his or their agent, or attorney for him or them, shall file a sufficient affidavit in the cause; or if the plaintiff or plaintiffs or some credible person, or his or their agent or attorney for him or them, shall make with such security as is required by this act, an undertaking to be approved by the court in which said suit may be pending, and when a writ of attachment shall be held to be defective, the same shall be allowed by the court, to be amended in such time and manner as it may direct, and thenceforth the suit shall proceed as if such defective proceedings had been originally sufficient." * * *

The question before us involves the consideration of the purpose of the affidavit, the conditions under which it may be amended, and the right of subsequent attaching creditors to question its validity. If, when property is attached, there is no service of summons upon the defendant and no appearance by him to the action, the proceeding is purely *in rem*. The jurisdiction of the court is confined to the property attached, and, if the attachment fails, there is nothing for the

court to adjudicate. It can render no judgment of any kind. If the defendant is served with summons, or appears to the action, the proceeding is both *in personam* and *in rem.* The court has jurisdiction of the person by virtue of service of its process, or of appearance; and of the property by virtue of the attachment. But the court acquires no jurisdiction of the property merely by virtue of its jurisdiction of the person. Waples on Attachment, 107, 332.

An affidavit is an essential prerequisite to the issuance of a writ of attachment. The statute is prohibitory in its terms. It provides that no writ shall issue except upon affidavit filed. The jurisdiction of the court in attachment proceedings depends upon the affidavit, and if none is filed the attachment writ and all proceedings under it are void. *Hargadine v. Van Horn,* 72 Mo. 370; *Wright v. Smith,* 66 Ala. 545; *Eads v. Pitkin,* 3 Iowa, 77; *Manley v. Headley,* 10 Kan. 88; Waples on Attachment, 76.

But the affidavit may, in essential particulars, fall so far short of the statutory requirements that it cannot be regarded as an affidavit for attachment. Two statements of fact are required in the affidavit, and each is indispensable: It must allege an indebtedness from the defendant to the plaintiff; it must also aver the existence of one of the grounds upon which the statute authorizes an attachment. A mere indebtedness gives no right to an attachment; nor does the fact alone that the defendant has placed himself in some position which, by the terms of the statute, would authorize his creditors to proceed against him by attachment. A man to whom he owes nothing cannot attach, and neither can a man to whom he is indebted when there is no statutory cause for attachment. The affidavit must combine the allegation of indebtedness with the allegation of cause. If either is entirely absent, there is no more power to issue the writ than if there were no affidavit at all. Napton, J., in *Bray v. McClury,* 55 Mo. 135; *Dickenson v. Cowley,* 15 Kan. 269; *Updyke v. Wheeler,* 37 Mo. App. 680; *Miller v. Brinkerhoff,* 4 Denio, 118; Waples on Attachment, 104.

Section 117 makes very liberal provision for amendments of informal or insufficient affidavits; and the contention is that this affidavit might have been amended if it had been objected to by the attachment defendant, but that, she having failed to make the objection, the defect cannot be taken advantage of by these plaintiffs. Conceding that where the defect is a mere irregularity the attachment cannot be questioned by other creditors, or by persons who have become interested in the property after the attachment, an inquiry whether the defect in this affidavit is a mere irregularity, or whether the affidavit is a sufficient compliance with the law to be amendable, becomes pertinent. This section provides that no writ of attachment shall be quashed on account of any informality or insufficiency of the original affidavit, if the plaintiff shall file a sufficient one. The "original affidavit" mentioned is the affidavit required by section 92. In order that there may be an amendment, there must be an original affidavit to amend, and that affidavit must be, in some measure, a compliance with the section requiring it. It is not meant that an affidavit of any nature, or containing any sort of statement, may, by amendment, be converted into a sufficient affidavit for attachment. On its face it must show at least an attempt to set forth the facts upon which an attachment is authorized. It is not to be supposed that the legislature intended by section 117 to override section 92, or impart validity to something which by the terms of the latter section is a nullity. The two sections must be construed together, and in harmony with each other, as parts of the same act; and we find nothing in the language of either which offers any serious impediment to so construing them. There must, before the writ can issue, be an affidavit filed, and it must set forth an indebtedness, so as to bring the plaintiff within the class of persons in whose favor an attachment is allowed. It must also allege the existence of some condition which the statute makes a ground of attachment, in order to show the right of the plaintiff to resort to this remedy for the collection of his debt. These statements

may be imperfect. They may not be sufficiently full, or they may be ambiguous or obscure. Nevertheless, if the affidavit contains them, it is sufficient to invest the court with jurisdiction, and set its machinery in motion. Now section 117 supposes that the court has acquired jurisdiction of the attachment proceeding. It supposes the original filing of an affidavit, which, although defective, contains enough to authorize the writ. A court has no power to make any order in a matter of which it has no jurisdiction; and hence its authority to allow the amendment of an affidavit, or the replacing of an insufficient affidavit with a sufficient one, must be confined to cases in which the insufficiency is not jurisdictional. A want of completeness of statement, or a failure to aver directly that which may nevertheless be gathered from the entire affidavit, may be cured by amendment. Such defects pertain to form rather than substance, and render the proceeding voidable, but not void. But the entire want of an essential jurisdictional fact cannot be supplied; and liberal as the statute is, it was not intended to permit a party under cover of an amendment to interpose an affidavit where originally there was either none at all, or one so lacking in the statutory requirements as to be equivalent to none at all. See *Greenvault v. Bank*, 2 Doug. 498; *Lillard v. Carter*, 7 Heisk. 604; *Hall v. Brazelton*, 40 Ala. 406; *Whitney v. Brunette*, 15 Wis. 61; *Booth v. Rees*, 26 Ill. 46.

The affidavit in this case sets forth no cause whatever for attachment. As a statement of indebtedness, it is defective in failing to give the nature of the indebtedness; but if the statement of indebtedness had been coupled with a ground of attachment, so as to be an affidavit for attachment, this defect might have been remedied by amendment. But there being no cause for attachment alleged, the want could not be supplied by amendment; there was no authority to issue the writ, and no lien was obtained upon the goods by its service. It is true that the attachment defendant, by consenting to the attachment, and confessing judgment, has

precluded herself from making the objection; but while the attachment would not now be set aside upon her motion, it is void as to these plaintiffs. The validity of their attachment is not disputed, Mentzer's attachment gave him no lien as against them, and they are entitled to have the property subjected to the payment of their debt unincumbered by his claim. *Bell v. Hall's Exec's*, 2 Duv. 288; *Whitney v. Brunette, supra; Dickenson v. Cowley, supra.*

We have been referred to some cases, decided by the supreme court of California, in which it was held that proceedings in attachment could not be collaterally questioned where by proper amendment, while in progress, they might have been made regular. We have examined these cases and find no disharmony between them and the general current of authority. We find in them the same distinction as elsewhere between proceedings which are voidable merely, and those which are absolutely void. The former cannot be avoided collaterally; a subsequent attachment creditor cannot avail himself of their irregularity; but the general doctrine that void proceedings can be assailed at any time, and at the suit of any person interested, is not questioned. In *Dixey v. Pollock*, 8 Cal. 570, the lien of an attaching creditor was adjudged of no effect as against that of one who attached subsequently, on the ground that the first attachment was invalid for jurisdictional reasons. See, also, *Mudge v. Steinhart*, 78 Cal. 34.

It is further contended that the remedy of the plaintiffs is not in equity. Counsel have not advised us of any legal remedy at the plaintiffs' command, and none occurs to us. The attachment defendant hastened to confess judgment long before she was required to appear, leaving the plaintiffs no time to intervene in that action, even supposing that intervention by them would have been proper. We think the facts bring the case within the jurisdiction of a court of equity, and that the plaintiffs have not mistaken their remedy.

In conclusion, counsel say that the plaintiffs' injunction operated as a release of errors in the attachment proceedings.

The rule sought to be invoked is statutory. Section 146 of the code provides that no injunction shall be granted to stay any judgment at law for a greater sum than the complainant shall show himself not equitably bound to pay ; and that such injunction, when granted, shall operate as a release of all errors in the proceedings at law that are prayed to be enjoined. This section contemplates only an injunction in favor of a party who is liable for the payment of the judgment, and is therefore inapplicable to these plaintiffs. Furthermore, the errors released by an injunction are those only which might be corrected on appeal or writ of error. The statute was not intended to apply to a proceeding which is absolutely void. A final answer to the objection is that this is not a suit to stay a judgment. It seeks to restrain the sale of certain articles of property, but does not in any manner propose to interfere with the judgment, or its collection by general execution.. See *R. R. Co. v. Todd*, 40 Ill. 89

The judgment will be affirmed.

*Affirmed.*

BISSELL, J., concurs.

REED, P. J., dissenting.

I regret that I am compelled to dissent from the majority opinion in this case. A proper regard for the views of my learned associates requires me to state the grounds of such dissent.

I. I cannot adopt the construction of the statute as construed by my learned associates, nor the reasoning by which the conclusion is reached that the affidavit for the attachment was a nullity and the affidavit void. He says: "There must, before the writ can issue, be an affidavit filed, and it must set forth an indebtedness, so as to bring the plaintiff within the class of persons in whose favor an attachment is allowed." It is not contended that the affidavit was not sufficiently full in this respect. Cursory examination will show that it was. He continues: "It must also allege the existence of some

condition which the statute makes a ground for attachment, in order to show the right of the plaintiff to resort to this remedy for the collection of his debt." This, in different language, is but a reiteration of the requirements specified in section 92 of the statute. If the requirements of that section were complied with, there would be no use for section 117. He continues: " *These statements may be imperfect. They may not be sufficiently full, or they may be ambiguous or obscure. Nevertheless, if the affidavit contains them, it is sufficient to invest the court with jurisdiction.*" Certainly, if the allegations in the affidavit " were imperfect and not sufficiently full," that would be a substantial defect, a defect in substance which it is admitted could be amended; but how could such amendment be made, if, as reasoned by the learned judge, by want of such statutory substance the court could acquire no jurisdiction? " Or they may be ambiguous or obscure," and an amendment will be allowed. The latter clause must be separated from the former, which was a defect in substance, while the latter is only of *form*, which would be amendable without section 117. If the affidavit can be amended in both form and substance, that is all that I claim. I take it that section 117 means what it says : " No writ of attachment shall be quashed on account of any *informality* or *insufficiency* of the original affidavit," etc.; providing for both formal and substantial amendments. An *insufficiency* must, unquestionably, be some lack of a substantial statutory requirement. Yet it is urged that any such lack voids the writ and the court had no jurisdiction. The reasoning and conclusion reached in the opinion, as I view them, abrogate section 117, and leave the plaintiff to strict compliance with section 92, or the quashing of his writ for want of jurisdiction.

I have carefully examined the learned opinion to ascertain from it what, in the opinion of my associates, the affidavit lacked, but failed to find it. The affidavit states the indebtedness, the amount, that it is overdue and unpaid. The statute at that time made an overdue promissory note ground

for attachment, the only allegation lacking was that it was evidenced by a promissory note, and being the fact it was in no respect jurisdictional and might have been added at any time on motion, they, certainly, could be covered by the word " *insufficiency* " in the statute. Hence, I conclude, that the proceeding was not void, but at most voidable, on motion of the defendants.

II. It is said in the opinion that the sole question for determination was the validity and consequent priority of the Mentzer attachment. As the controversy in this case is entirely in regard to the goods attached, and the record disclosed the fact that, by personal service of summons, the proceeding was *in personam* as well as *in rem*, and the attachment only auxiliary, this not being an attachment against a nonresident, I fail to see the relevancy and importance of the discussion in regard to proceedings *in rem* and *in personam*. It is said : " The jurisdiction of the court in attachment proceedings depends upon the affidavit, and if none is filed the attachment writ and all proceedings under it are void ; " and several authorities from other states are cited in support of the proposition. The fact is shown by the record that by personal service of writ of attachment and summons, the proceeding was both *in rem* and *in personam*, and the attachment, as in all cases of that character, was only auxiliary. I can find nothing in the cases cited making them applicable to the question in controversy.

As proceeding by attachment is purely statutory, it would have been far more satisfactory had some authority been found construing our statute or a similar one, and holding the affidavit in this case void and equivalent to none at all, but none such are presented. It is said " the affidavit must combine the allegation of indebtedness with the allegation of cause," and several authorities are cited in support. Test the affidavit by this, we find the indebtedness stated definitely, and the cause, " *overdue* and unpaid," which was sufficient under the statute. Here are both debt and cause stated. That the indebtedness was evidenced by a promissory note

was not stated. In the entire discussion I can find no author- ity cited or referred to sustaining the position of the court, while section 117 explicitly declares that no writ shall be quashed " on account of any informality *or insufficiency* of the original affidavit."

III. Proceeding, the opinion says: " We have been referred to some cases, decided by the supreme court of California, in which it was held that proceedings in attachment could not be collaterally questioned where by proper amendment, while in progress, they might have been made regular. We have examined these cases and find no disharmony between them and the general current of authority. We find in them the same distinction as elsewhere between proceedings which are voidable merely, and those which are absolutely void," etc. It will be seen that the whole decision is based upon the assumption that the proceeding was absolutely void. Our statute was bodily imported from California. Its construc- tion by the courts of that state are authoritative, if not con- clusive. I fear, from the hasty generalization above given, that the examination of those decisions was too cursory, and that they cannot be so easily disposed of. It appears to be the well settled law of that state that the sufficiency of the affidavit and the regularity of the attachment proceedings cannot be questioned and raised collaterally by one not a party to the proceeding.

*Porter v. Pico*, 55 Cal. 165, the court held : " This lien was not affected by any irregularities in the attachment itself, nor was it destroyed by the judgment rendered in the attach- ment suit. Any irregularities in obtaining it were waived by the defendant to the suit when he appeared and answered, without taking advantage of them by motion or otherwise, in the course of the proceedings. The process is merely auxil- iary, and the judgment in the action cures all irregulari- ties."

In *Scrivener v. Dietz*, 68 Cal. 1, an almost identical ques- tion in regard to the irregularity of the affidavit was presented. The court said : " Notwithstanding the infirmity, the attach-

ment was not void. It was only voidable at the instance of the attachment defendant, and could not be assailed collaterally by a stranger." And see, also, *Moresi v. Swift*, 15 Nev. 215, where the same statute was construed.

In the opinion, *Dixey v. Pollock*, 8 Cal. 570, and *Mudge v. Stienhart*, 78 Cal. 34, are cited; and, in regard to the first, it is said that the lien of the first attaching creditor was adjudged of no effect as against that of a subsequent attaching creditor, on the ground that the first attachment was invalid for jurisdictional reasons. The citation and statement are liable to mislead, unless the case is examined. The learned judge who wrote the opinion seems mistaken. There were three attachments against the same defendant, in all of which plaintiffs had recovered judgment,—first, *Adams v. Pollock;* second, *Pollock v. Pollock;* third, *Dixey v. Pollock.* In the first there was an irregularity in the papers. In the lower court it was held fatal, and judgment awarded to Pollock, plaintiff. Dixey, the third, appealed, and the supreme court held that the irregularity in the first papers (*Adams Case*) was not fatal, reversed the judgment in favor of Pollock, the second, and gave it to Adams, the first attaching creditor, using the following significant language: " When the contest is between creditors, all the equities are in favor of the most diligent. *The subsequent execution or attachment creditor can claim no equitable relief.* * * * *And it is well settled that a stranger cannot interfere upon the ground of irregularity.*" A case more fatal to, and at variance with, the conclusions reached, can hardly be found.

An examination of the case of *Mudge v. Stienhart*, 78 Cal. 34, cited, will show nothing in line or in common with the questions here presented. The defendant was nonresident; the proceeding purely *in rem;* was in an action of *tort.* The court held : *First*, that attachment was purely statutory, and could have no force except in the cases provided by the statute ; *second*, " *the existence of a contract*, express or implied, is an essential basis, without which no writ of attachment can properly issue, and as in this case the action *was founded*

*not upon contract, but upon the fraud and wrongful acts of the defendant,*" it was held void. Its want of applicability to the questions in this case is at once apparent. In support of my positions here taken, I will also respectfully call attention to *Cooper v. Reynolds,* 10 Wall. (U. S.) 319; *Pennoyer v. Neff,* 95 U. S. 714; *Carothers v. Click,* 1 Morr. (Iowa), 54; *Drum v. Crocker,* 22 Ind. 324, where it is said: "Objections to the regularity of attachment proceedings cannot be first raised in collateral suits." See, also, Drake on Att., sec. 273; *McComb v. Reed,* 28 Cal. 285; *Morgan v. Avery,* 7 Barb. (N. Y.) 657; *Newton v. The Bank,* 14 Ark. 9; *Morse v. Smith,* 47 N. H. 477; *Sterling v. Levy,* 1 Daly (N. Y.), 95.

It is said in the opinion, "The two sections [92 and 117] must be construed together, and in harmony with each other, as parts of the same act." I can see nothing incompatible in the two sections that needs construction or requires the affidavit to be held void in order to harmonize the sections. Section 92 is a general statute, and sets forth what the affidavit shall contain in order to render the attachment effective against the chattels of the defendant. If the requirements are not complied with, defendant may move to quash. Then the special statute, section 117, declares that the proceedings shall not be quashed by reason of irregularity and insufficiency, if plaintiff shall amend and reform the affidavit, and the authorities are conclusive that the matter is confined entirely to the parties. If the defendant overlooks or disregards the defects, he waives them, and can legally do so, as in case of any other waiver, and the judgment cannot be attacked by outsiders.

IV. There was a fatal defect in proof, as well as in the complaint,—no allegation that the attachment of appellees was valid, that it was ever levied upon the goods in controversy or upon anything else, nor is there any such fact stipulated. The record shows that appellees made no proof nor offered any evidence whatever of any attachment proceedings, nor any judgment. The whole thing rests upon the

allegation "* * * and caused to be issued a writ of attachment, which writ of attachment was directed to the sheriff of Arapahoe county, whereby the said sheriff was to attach the rights, credits, monies and effects, goods and chattels of the said L. Filberg wherever they might be found." Absolutely nothing, either in complaint or evidence, to show any levy upon or legal claim to the goods in controversy. How could the court assume that the attachment proceedings were regular, and that the judgment was regular, and decree, without exhibits or evidence, a valid judgment, by attachment of appellees, and that the "subsequent and junior attachments of plaintiff * * * shall have precedence over the defendant O. F. Mentzer's attachment and proceedings thereunder?" The court was compelled to assume that appellees' attachment and judgment were valid, that it was levied upon the goods in controversy, and that there was not other and different property out of which the money could be made. My learned associates assume the same facts, adopt them, and affirm the decree. I cannot so do. The complaint was fatally defective, and conferred no jurisdiction, and there was absolutely no proof on which the decree could be based.

V. The question of the jurisdiction of the court of equity to declare a judgment at law void, and substitute and give precedence and priority to another supposed judgment alleged to exist, has not, in my opinion, received that careful attention that its importance requires. It briefly says: "Counsel have not advised us of any legal remedy at the plaintiffs' command, and none occurs to us. The attachment defendant hastened to confess judgment long before she was required to appear, leaving the plaintiffs no time to intervene in that action, even supposing that intervention by them would have been proper. We think the facts bring the case within the jurisdiction of a court of equity, and that the plaintiffs have not mistaken their remedy." What facts are referred to as bringing the case within the jurisdiction of a court of equity? Certainly not the haste of the defendant

in recognizing the validity of the attachment and confessing judgment before the return day. Under our statutes, and numerous decisions, defendant could legally prefer one creditor and exclude others. It is done on a large scale every month,—the entire stock and business transferred to a creditor,—and the first intimation to the other creditors is a change of sign and the declaration of ownership. Yet it cannot be claimed, unless fraud is established, that such disposition of the entire stock confers jurisdiction on a court of equity. The defendant might, in the first instance, have made a full bill of sale or confessed judgment, and a court of equity would have been powerless to review or declare the transaction void in the absence of fraud,—much less decree the priority of another creditor.

The entry of a judgment at law and the issuing of an execution, and the declaring it void and substituting another, were in the same court, by different judges, and affords a curious commentary on the administration of the law; and the fact, as stated in the opinion, that appellees had no legal remedy, would not confer jurisdiction upon a court of equity. It is far from the fact that a court of equity has jurisdiction because the plaintiff may allege that he has no remedy at law. There are numerous cases like the present, where parties have no rights that can be enforced in either equity or at law.

In reviewing actions at law, the court of chancery is confined in very narrow limits. The law is clearly and concisely stated in 2 Story's Eq. Jur., secs. 1570 to 1575, and is so at variance with the views of my associates, I cannot refrain from quoting from section 1573: "In matters where the jurisdiction of the courts of law and equity is entirely concurrent, the adjudication of the court of law is conclusive upon courts of equity. And a court of equity will not interfere to relieve a party from such adjudication except upon the ground of newly discovered matter since the trial; of fraud in obtaining the judgment; or of some inevitable accident or mistake." Section 1575: "It seems to be conclu-

sively settled that a judgment can only be impeached in a court of equity *for fraud* in its concoction. It is said, ' there is no case in which equity has ever undertaken to question a judgment for irregularity.' " See *Emmerson v. Udall*, 13 Vt. 477; *Pettes v. Bank of Whithall*, 17 Vt. 435; *Carrington v. Hollabird*, 17 Conn. 530; *Shottenkirk v. Wheeler*, 3 Johns. Ch. 275; *Baker v. Morgan*, 2 Dow (H. of L. Cas.), 526; *Elliott v. Balcom*, 11 Gray, 286; *Boles v. Johnston*, 23 Cal. 226.

In Drake on Att., sec. 262, it is said that for irregularities in the proceedings, " other attaching creditors cannot make themselves parties to the proceedings for the purpose of defeating them on that account. Nor will a bill in equity lie in favor of a junior attacher to set aside a senior attachment on the ground of insufficiency of the affidavit on which it was issued; " citing numerous authorities. And see *Fridenberg v. Pierson*, 18 Cal. 152; *Dixey v. Pollock*, 8 Cal. 570; *McPherson v. Snowden*, 19 Md. 197; *Buckley v. Lowry*, 2 Mich. 418; *Curtis v. Stewert*, 36 N. J. L. 304; *Thompson v. Meek*, 3 Sneed, 271; *Danaher v. Prentiss*, 22 Wis. 311; *Nelson v. Turner*, 2 Md. Ch. 73.

The only allegations in the complaint that could confer jurisdiction on a court of equity were that the suit of Mentzer against Filberg " was commenced unjustly and without foundation," and that no indebtedness existed, and that, " for the purpose of defrauding her creditors and the plaintiff," etc., she colluded with plaintiff and others, and confessed judgment, etc. These charges were abandoned and no proof offered in support of them, and the court below found the debt valid. After such finding the court was, under the authorities, divested of jurisdiction for any purpose whatever,—powerless to afford injunctive relief, which was the only relief it could have granted, had the charges of fraud and collusion been sustained. I have been unable to find a case where a court of equity with concurrent jurisdiction assumed the right to review and retry a case, and set aside a judgment at law, where either fraud, collusion, accident

or mistake was not alleged and established. In this case the court below, without proof of any character whatever, had to assume that the second attachment was regular, and this court is required to indulge the same presumption, and to hold, *first*, that the alleged attachment was regular, and without even an allegation or proof that any judgment had been obtained, or any proof whatever of any indebtedness from Filberg to appellees, and to hold the judgment of Mentzer void, and the goods liable on the second, on the bare allegation that Filberg was indebted and they " had caused to be issued a writ of attachment, which was directed to the sheriff of Arapahoe county," with no allegation or proof that the writ had ever been served. I cannot indulge in such presumption in a case *even in equity*.

Leaving out all the legal questions above discussed, on the pleadings, and with no proof, the court was without jurisdiction or power to recognize the claim of appellees,—much less subrogate a prior judgment to it.